## SCHMID, GUARDIAN, *v.* INDIANA TRAVELERS ACCIDENT ASSOCIATION.

[No. 6,454.    Filed November 17, 1908.]

1. INSURANCE.—*Accident.*—*Injuries from Intentional Acts.*—Injuries occasioned as the direct result of intentional acts are not produced by accidental means within the terms of an accident insurance policy.    p. 494.

2. SAME. — *Accident.* — *Intentional-Act Clause.*—*Application of, to Fatal Injuries.*—An accident policy providing that the company shall not be liable for injuries or death "from any of the following causes: * * * injury resulting from the intentional act of the insured," excludes liability on account of death resulting from intentional acts, as well as injuries resulting therefrom. p. 494.

3. WORDS AND PHRASES.—*"Accident."*—*"Accidental Means."*—*Insurance.*—The word "accident," as used in accident insurance policies, imports an event that occurs without one's foresight or expectation; and an injury is caused by "accidental means" when produced by something unforeseen, unexpected and unusual. p. 495.

4. INSURANCE.—*Accident.*—*Violence.*—An accident policy covering "physical bodily injuries through external, violent and accidental means" embraces only those injuries caused by the concurring elements of force and accident.    p. 495.

5. SAME.—*Accident.*—*Usual Acts.*—Injuries resulting from. ordinary acts, though the result of such acts was unexpected, if no unusual circumstances intervene, cannot be regarded as resulting from accident within the meaning of an accident policy. p. 496.

6. SAME.—*Accident.*—*Accidental Means.*—*Paralysis of Heart from Exertion.*—Death from heart paralysis, caused by carrying baggage up a long flight of stairs, in a rarefied atmosphere, is not brought about by "accidental means," and is not within the terms of an accident policy covering death from "accidental means."    p. 498.

From Superior Court of Marion County (70,983) ; *Vinson Carter,* Judge.

Action by Matilda Schmid, as guardian, against the Indiana Travelers Accident Association.    From a judgment for defendant, plaintiff appeals.    *Affirmed.*

*Wilson & Townley,* for appellant.

*McMaster & Hedrick* and *Scott & Scott,* for appellee.

COMSTOCK, J.—Action by appellant against appellee upon a contract of insurance issued by appellee to B. Frank Schmid, in which appellee agreed, with certain exceptions, that should said Schmid sustain a bodily injury through external, violent and accidental means, which injury should result in death, appellee would be liable to Schmid's beneficiaries in a certain sum. Appellant in her complaint sets out Schmid's death, and the cause thereof, together with certain facts and circumstances connected therewith, and claims that such death, upon the showing of such allegations, was a death from injuries sustained through external, violent and accidental means, and that appellee was liable therefor under the terms of its contract.

Appellee demurred to said complaint, upon the ground that the same did not state facts sufficient to constitute a cause of action, which demurrer the court sustained, and appellant refusing to plead further, judgment was rendered against her for costs. The correctness of the ruling of the court is the only error assigned.

The policy, and the application and by-laws of the association, which are made a part thereof, are set forth as exhibits to the complaint. So far as material to the solution of the legal questions presented, the provisions of such policy are as follows:

"No claim of any character shall ever accrue upon this contract, unless it arises from physical bodily injury, through external, violent and accidental means, while this contract is in force, and then only when the injury shall, independently of all other causes, immediately and wholly disable the insured from performing any and every kind of business pertaining to his occupation as above stated. * * * This certificate of insurance does not cover injuries nor death for which there is no visible mark upon the body of the insured; nor death nor injury from any of the following causes: disease or bodily infirmity, or acts committed by the insured,

while under mental aberration, fits, insanity, rupture, vertigo, walking in sleep, narcotics, intoxication, surgical treatment, sun-stroke, freezing, voluntarily taking poison, handling or using dynamite or other explosives, riots or war, quarreling, dueling, wrestling, fighting, gymnastic sports, voluntary exposure to unnecessary danger, injury resulting from the intentional act of the insured or other persons, or received while engaged in any unlawful act, or while in any gambling house, or house of ill-fame, or house of assignation, or any place prohibited by law; nor shall it cover suicide, whether the person is sane or insane.''

The following are the allegations of the complaint with reference to the manner of Schmid's death: ''The plaintiff further says, that on or about December 27, 1905, while said policy was in full force and effect, said B. Frank Schmid was killed by external, violent, and accidental means, in the manner following: That up to and prior to said date last named, and for a long time anterior thereto, said B. Frank Schmid was a resident of the city of Indianapolis, and a citizen of, and domiciled in, the State of Indiana; that said city last named is located about seven hundred feet above sea-level; that a few days prior to December 27, 1905, said Schmid left Indianapolis on a journey to Colorado Springs, in the state of Colorado, on business, and traveled by railway directly from Indianapolis to Colorado Springs; that said city of Colorado Springs is about six thousand feet above the sea-level; that said journey covered — hours, and was tedious and confining; that said Schmid, at the time, was over fifty years of age; that he arrived at said Colorado Springs on the evening of December 27, 1905; that he left the railway station, carrying in each hand a traveling bag or satchel; that he went directly to the Antlers hotel in said city of Colorado Springs, said hotel being located on an elevation in said city; that said Schmid, in going to said hotel from the train and station, ascended a flight of one hundred steps leading to said hotel, being the usual method of approach by pedestrians; that he walked from the top of said

steps into the lobby of said hotel; that immediately after entering the hotel he suddenly fell forward to the floor, and expired in a few moments; that the death of said Schmid was due to the circulatory failure and paralysis of the heart, caused by the high altitude and unusual strain on the heart, occasioned by the muscular exertion in climbing said steps, under such circumstances, in such a rarefied atmosphere; that said circulatory failure and paralysis of the heart, which resulted in Schmid's death, would not have occurred under ordinary circumstances; that said Schmid's heart was sound, to the extent that it would have proved adequate and sufficient under ordinary circumstances, for many years; that said circulatory failure or paralysis of the heart was caused solely by the unusual and extraordinary strain to which it was subjected, as a result of climbing said steps, while carrying said satchels, which were of considerable weight, combined with the effect of such rarefied atmosphere, to which said Schmid was unaccustomed. Plaintiff further says that upon the occurrence of said circulatory failure or paralysis of the heart, as aforesaid, and prior to his death, there appeared upon the face of Schmid a marked and unusual pallor, and thereupon said Schmid fell, as aforesaid, to the floor of said hotel; that in falling said Schmid struck his head violently against the floor, causing a cut or laceration upon his forehead; that the death of said Schmid occurred several moments after said fall; that said fall and the violent striking of his head against the floor, as aforesaid, contributed to cause his death; that said death resulted from the combined effect of circulatory failure or paralysis of the heart, and the violent striking of his head against said floor, as the result of said fall, as hereinbefore set forth." It is further alleged that timely and due notice of and the particulars of Schmid's death were given, and that appellee denied liability; that the beneficiaries named in the policy were the minor children of said Schmid, and that appellant is their guardian.

The question for determination is whether the death of

Schmid was the result of accidental means within the provision of the policy. It is claimed by appellant, that where "the performance of intentional acts is followed by a result which is not the natural and probable consequence of those acts; that where the result is altogether out of the ordinary, and could not reasonably have been anticipated or expected, such a result is regarded as having taken place by accidental means; that the present case is clearly one of the latter class; that Schmid's death resulted from heart paralysis, occasioned by a strain upon the heart, which was the altogether unusual and unexpected result of muscular exertion, under the circumstances described in the complaint; that neither the strain upon the heart, nor heart paralysis, was the natural or probable consequence of such exertion; that such results could not reasonably have been anticipated or expected—hence the death must be regarded as accidental." *Horsfall* v. *Pacific Mut. Life Ins. Co.* (1903), 32 Wash. 132, 72 Pac. 1028, 63 L. R. A. 425, 98 Am. St. 846; *Rustin* v. *Standard Life, etc., Ins. Co.* (1899), 58 Neb. 792, 79 N. W. 712, 46 L. R. A. 253, 76 Am. St. 136; *Martin* v. *Travelers Ins. Co.* (1859), 1 F. & F. 505; *Atlantic Accident Assn.* v. *Alexander* (1898), 104 Ga. 709, 30 S. E. 939, 42 L. R. A. 188; *Rodey* v. *Travelers Ins. Co.* (1886), 3 Johnson (N. Mex.) 316, 9 Pac. 348; *Miller* v. *Fidelity & Casualty Co.* (1899), 97 Fed. 836; *Western Commercial, etc., Assn.* v. *Smith* (1898), 85 Fed. 401, 29 C. C. A. 223, 40 L. R. A. 653; *United States Mut. Accident Assn.* v. *Barry* (1889), 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60; *Bailey* v. *Interstate Casualty Co.* (1896), 40 N. Y. Supp. 513; *American Accident Co.* v. *Reigart* (1893), 94 Ky. 547, 23 S. W. 191, 21 L. R. A. 651, 42 Am. St. 374; *Hamlyn* v. *Crown, etc., Ins. Co.,* [1893] 1 Q. B. 750. In the first case just mentioned, the insured in lifting a weight, while in a difficult position, strained the muscles of his heart, causing a violent dilation of the heart, from which he died. The court held that the injury was the result of an accident within the meaning

of the policy. This holding is based on the reason stated as follows: ''The policy insured the deceased against the effect of bodily injuries 'caused solely by external, violent, and accidental means.' Death by accident is defined to be 'death from any unexpected event, which happens as by chance, or which does not take place according to the usual course of things.' So a strain of the muscles of the back, caused by lifting heavy weights in the course of business, is injury by accident or violence 'occasioned by external or material causes operating on the person of the insured.' 2 May, Insurance (4th ed.), §514; *United States Mut. Accident Assn.* v. *Barry* [1889], 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60; *North American, etc., Ins. Co.* v. *Burroughs* [1871], 69 Pa. St. 43, 51, 8 Am. Rep. 212; 1 Cyc., 248, and cases cited.'' In 2 May, Insurance (4th ed.), §514, the definition of the word ''accident,'' fails to make any distinction between an accident and a result by accidental means.

In *United States Mut. Accident Assn.* v. *Barry, supra,* the court said: ''If a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected or unusual occurs which produces the injury, then the injury has resulted through accidental means.'' In the case of *North American, etc., Ins. Co.* v. *Burroughs, supra,* the insured was killed by accident while assisting in hauling hay. The court held that an accidental strain resulting in death is an accidental injury within the meaning of the policy. The question was upon the sufficiency of the preliminary proof of death resulting from accidental injuries. It appears that the affidavit stated that the deceased accidentally strained himself while loading hay, and the court held, that ''it is a matter of no consequence so far as respects the liability of the company, whether it was produced by an accidental strain or by an unexpected blow from the handle of a pitchfork.''

The phrases, "unanticipated event," and "which does not take place according to usual course of things," as used in the two cases last cited, refer to the means, and not to the injury resulting therefrom. In *Horsfall* v. *Pacific Mut. Life Ins. Co., supra,* the court seems to have decided that the deceased met with an accident, rather than the particular question whether the death was brought about by accidental means. The opinion contains no discussion of accidental means. In any view, however, it is not in line with the cases upon which it purports to be based.

The cases of *Hamlyn* v. *Crown, etc., Ins. Co., supra, Appel* v. *Aetna Life Ins. Co.* (1903), 86 Hun, App. Div., 83, *Horsfall* v. *Pacific Mut. Life Ins. Co., supra,* and *Fetter* v. *Fidelity, etc., Co.* (1903), 174 Mo. 256, 73 S. W. 592, 61 L. R. A. 459, 97 Am. St. 560, are referred to in *In re Scarr* (1905), 1 Am. and Eng. Ann. Cas. 787. In the case last named the policy provided for the payment of a certain sum by the insurance company upon the death of the insured from "any bodily injury caused by violent, accidental and external visible means within the terms of the policy," etc.. Scarr was in the apparent enjoyment of good health, and able to discharge the duties of his employment, which were active duties, and he was unaware that his heart was affected. In fact, however, on December 26, and for some considerable time prior thereto, his heart was in a weak and unhealthy condition, the effect of which was to render it less capable of working under strain. At about 9:45 o'clock on the morning of December 26, being apparently in his usual state of health, he attempted to eject a drunken man from the premises where he was working, using some physical exertion for that purpose by pushing or pulling in order to overcome the drunken man's passive resistance. The effect of the physical exertion was to cause dilation of the heart, which resulted in his death on January 25, 1904. But for what happened on December 26, Scarr might have lived a considerable time. The evidence showed that there was no intervening or fortu-

itous cause. The court said: "It seems to me that there was nothing accidental in the pushing and pulling of the drunken man or the exercise of physical exertion in so doing. Scarr intended to do this. The drunken man offered only passive resistance." The court further said: "The only English case that has any real bearing is *Hamlyn* v. *Crown, etc., Ins. Co.*, [1893] 1 Q. B. 750. In that case the words of the policy were practically the same as here. The plaintiff stooping forward to pick up a marble dropped by a child as it rolled from him, * * * and in doing so wrenched his knee." The court held that as the plaintiff did not mean to get into a position in which he might wrench his knee, there was some accident; that it was not the ordinary result of such an action. The getting into the particular position in which the injury happened was not purposely done. Again, speaking of the case at bar, the court properly said: "Nor would any one in the present case speak of Scarr as having met with an accident. The question cannot, in my opinion, depend on whether or not Scarr knew he had a defective heart. If he knew that, he probably would not have tried to eject the drunken man, but that does not make the ejecting or the result accidental." In referring to *Fetter* v. *Fidelity, etc., Co., supra,* the court said: "There the assured was endeavoring to close a window sash and used a pole. * * * The cause was the slipping of the pole, which threw him on the table. The slipping of the pole and his falling on the edge of the table were plainly accidental. It turned out that he had cancer, but the cancer would not have killed him for some time. * * * That case is, in my opinion, clearly distinguishable." As to *Appel* v. *Aetna Life Ins. Co., supra,* the opinion says, in part: "Riding the bicycle was intentional, and there was no fall or collision. He rode where he chose and brought into play such muscles of the body as he willed. I think the case is very like the present, and it supports the view I have taken." As to *Horsfall* v. *Pacific Mut. Life Ins. Co., supra,* the opinion

says: "He injured his heart, which was in a perfectly healthly condition, and died in consequence. Held, death accidental. This, I think, may be justified by the fact that injury to the heart was not in his case the natural consequence of lifting the weight, by the unintentional exertion which his position made necessary. It is at all events distinguishable on this ground. In my opinion there never was any accident here at all, and consequently the plaintiff fails in bringing the case within the terms of the policy."

In *Rustin* v. *Standard Life, etc., Ins. Co., supra,* where the injury upon which the claim for indemnity is grounded was the result of an effort on the part of insured to raise a heavy dumb-bell from the ground, the contract contained stipulations exempting the company from liability for injuries occasioned by unnecessary lifting and voluntary overexertion. The court held that it could not be said as a matter of law that the slight elevation of a 300-pound weight by a strong man accustomed to lifting was voluntary overexertion. It was held that a condition in a contract of casualty insurance forbidding unnecessary lifting is not broken by an act of lifting which was apparently reasonable, and performed in the line of duty. The terms of contract are not set out, and there was no question involved as to whether the injury was one from accidental means.

In *Atlantic Accident Assn.* v. *Alexander, supra,* the policy was payable to plaintiff, and insured her husband against "personal, bodily injuries, effected * * * through external, violent and accidental means." The plaintiff alleged that the insured was injured by the unexpected and unforeseen using of a heavy hammer; that he was injured by the lacerating, tearing and wounding of his person by external, violent and accidental means, the same being the direct and immediate result of such means; that from said result alone he died in less than two days. The court held that the evidence was sufficient to authorize the jury to infer that the plaintiff's husband was injured in the manner described in

the policy. It appears from the record that he was a hale, hearty man. His occupation was that of a blacksmith. On this particular occasion, in striking a slanting blow, he suddenly felt a severe pain in his abdomen. The injury produced a hernia, which resulted, in a few days, in death. The court held that there was evidence tending to show that the injury was received by insured from such means that the jury could determine as a question of fact whether the injury did result from accidental means. The case is not applicable to the case at bar, in which it affirmatively appears that the injury wholly resulted from intentional means.

In *Rodey* v. *Travelers Ins. Co., supra*, plaintiff in an action on an accident policy testified that he dived from a plank into water six or seven feet deep, and that the ''tympanum of the ear was ruptured by external violence in diving.'' It was held that the court had fairly submitted to the jury the question as to whether the injury was caused by external, violent and accidental means, stating: ''A slight accidental turn of the body while descending into the sea might very easily bring his ear in contact with the water in such manner that the force of his passage through it would create the injury.'' In *Miller* v. *Fidelity & Casualty Co., supra*, the action was under a policy insuring the holder against ''bodily injuries sustained through external, violent and accidental means,'' but excepting ''injuries, fatal or otherwise, resulting from poison or anything accidentally or otherwise taken, administered, absorbed, inhaled,  *  *  * or any disease or bodily infirmity,'' etc. The complaint alleged that the insured sustained bodily injuries by swallowing certain hard, pointed and resistant substances of food, which substances accidentally, by reason of the force with which and the manner in which they came in contact with the intestinal tissue of the insured, and by reason of a weakened condition of said tissue, caused by illness from which he otherwise had recovered, of which weakened condition the

insured had no knowledge, perforated and wounded his intestinal canal, causing his death. A demurrer to the complaint was overruled, holding that the insured was not, by the first clause quoted, limited to an external effect, nor to one beginning at the surface. It may be wholly internal. The only question was the sufficiency of the complaint to withstand the demurrer.

In *Western Commercial, etc., Assn.* v. *Smith, supra,* an abrasion of the skin of a toe, unexpectedly caused without design by unforeseen, unusual and unexpected friction in the act of wearing a new shoe, was held an accidental injury, within the meaning of an accident policy. The court stated that it was difficult to understand why an abrasion of the skin, produced unexpectedly and without design, by friction in wearing a new shoe, does not fall within the same category as if one slipped, without design, in walking, or punctured his foot by stepping on a nail, or pierced it with a nail in his shoe while drawing it on. In *Bailey* v. *Interstate Casualty Co., supra,* the insured, a physician, was in his carriage in the highway, and administering to himself, for extreme exhaustion, medicine with a hypodermic needle. His horse suddenly started, by reason whereof he accidentally inserted the needle deeply into his leg, causing an injury on account of which blood poisoning immediately set in, whereby the plaintiff was disabled. The court said: "If, in the use of the needle, an agency that otherwise would not have been in force, and which was the efficient cause of the injury, was accidentally set in motion, I see no good reason why it might not be found that the injuries were attributable to the accident, as the sole and proximate cause." In *American Accident Co.* v. *Reigart, supra,* death was caused by the accidental passing of a piece of meat into the windpipe and lodging there. It was held to be death through external and violent means within the principles stated. In Niblack, Accident Ins. (2d ed.), §373, the case of *Hamlyn* v. *Crown, etc., Ins. Co., supra,* is used to distinguish the dif-

ference between an injury that is the result of accidental means and one that is not.

Appellant also cites the following cases: (death resulting from asphyxiation) *Pickett* v. *Pacific, etc., Ins. Co.* (1891), 144 Pa. St. 79, 22 Atl. 871, 13 L. R. A. 661, 27 Am. St. 618; *Fidelity Casualty Co., etc.,* v. *Waterman* (1896), 161 Ill. 632, 44 N. E. 283, 32 L. R. A. 654; *Paul* v. *Travelers Ins. Co.* (1889), 112 N. Y. 472, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. 758; (death from drowning) *Peele* v. *Provident Fund Soc.* (1897), 147 Ind. 543; (death from strain and fright in effort to control runaway horse) *McGlinchey* v. *Fidelity & Casualty Co.* (1888), 80 Me. 251, 14 Atl. 13, 6 Am. St. 190; (death caused by strain from lifting) *Standard Life, etc., Ins. Co.* v. *Schmaltz* (1899), 66 Ark. 588, 53 S. W. 49, 74 Am. St. 112; (death resulting from eating unsound oysters) *Maryland Casualty Co.* v. *Hudgins* (1903), (Tex. Civ. App.), 72 S. W. 1047.

As to what constitutes an accident, the reported cases are not in accord. But our own decisions, with the weight of the decisions of other courts, hold that where an in-

1. jury occurs as the direct result of intentional acts it is not produced by accidental means. In the case at bar, the result is alleged to be the result of certain intentional acts. The complaint alleged that "the death of said Schmid was due to the circulatory failure and paralysis of the heart, caused by the high altitude and unusual strain on the heart, occasioned by muscular exertion in climbing said steps, under such circumstances, in such a rarefied atmosphere," etc.

The allegations of the complaint are that the injury was caused solely by the exertion, by the acts which are shown to be intentional, so that there can be no question that

2. the result followed directly from the intentional acts.

It is claimed by appellant that the intentional-act clause applies only to nonfatal injuries. Under the provision of the contract which excepts liability for death from

injuries resulting from intentional acts of insured, it is clear
that the intention was to except either death or injury "re-
sulting from" intentional acts. It would destroy the in-
tention of the instrument to hold that it applied only to non-
fatal injuries. There is no injury from any specified cause
in the whole provision which is excepted, unless death from
the same injury is also excepted. The clause in the policy in
suit had for its subject death or injuries. In *Webber* v.
*Home Ben. Society* (1899), 21 Ind. App. 345, the policy pro-
vided that a certain sum would be paid as a funeral fund
"if death should result from any cause at any time while
this member is in good standing. * * * No benefits will
be paid for self-inflicted injuries." It was contended that
"self-inflicted injuries" should be construed as applying
only to injuries inflicted not fatal. The policy related to
injuries, fatal and nonfatal, and the part quoted was an
independent and separate sentence. The court, on page 347,
said: "There is some obscurity in the policy, but we think
it was the intention that in case of self-inflicted injuries there
should be no payment of benefit, whether the injury resulted
in mere disability or in death."

In this State it has been held that the word "accident,"
as used in accident policies, "should be given its ordinary
and usual signification as being an event that takes
3.  place without one's foresight or expectation." *Su-
preme Council, etc.,* v. *Garrigus* (1885), 104 Ind. 133,
54 Am. Rep. 298; *Newman* v. *Railway Officials, etc., Assn.*
(1896), 15 Ind. App. 29, 33. Applying this definition, an
injury results from accidental means when it is produced by
something unforeseen, unexpected and unusual in the act
preceding it.

The policy in suit is not a contract of indemnity against
death or injury caused by any means. It excepts injuries and
death from a number of causes before enumerated,
4,  and indemnifies only where such injuries arise from
"physical bodily injuries through external, violent

and accidental means.'' It embraces only cases where the element of force and accident concur in effecting the injury.

It has been held that if the injury resulted from ordinary acts, no unusual circumstances intervening, it cannot be regarded as an accident. *McCarthy* v. *Travelers Ins. Co.* (1878), Fed. Cas. No. 8,682. Thus, where a carpenter in the performance of his ordinary work put forth an effort, which was too severe for his then physical condition, an injury resulting therefrom is not an accident. *Niskern* v. *United Brotherhood, etc.* (1904), 87 N. Y. Supp. 640. So where the insured, while in an emaciated condition, after safely alighting from a train carried baggage weighing sixty pounds for fifty yards, and in doing so injured himself in an unexplained manner, so that on putting the baggage down a defect in his vision became noticeable, which resulted in loss of sight, it was held that he could not recover for accidental injury. *Cobb* v. *Preferred Mut. Accident Assn., etc.* (1895), 96 Ga. 818, 22 S. E. 976. In *Feder* v. *Iowa State, etc., Assn.* (1899), 107 Iowa 538, 78 N. W. 252, 43 L. R. A. 693, 70 Am. St. 212, it was held that the death of the insured was not accidental which resulted from the rupture of an artery, occurring when he arose to close a window, in the absence of evidence that anything occurred which he had not foreseen, except the rupture. In *Smouse* v. *Iowa State, etc., Assn.* (1902), 118 Iowa 436, 92 N. W. 53, appellant was recovering from a sickness, and being suddenly awakened from his sleep quickly arose, appearing somewhat dazed or confused, hurriedly attempted to remove his night shirt over his head, and while his hands were raised, became entangled therein, and put forth exertions which broke a blood vessel. It was held that his movements were not involuntary so as to render the injury accidental. In *Southard* v. *Railway, etc., Assur. Co.* (1868), 34 Conn. 574, it is said that an injury caused by insured's jumping from the cars, or by running to see if they were coming, is not an injury resulting from accidental means, if he acted for his

own convenience, and not from perilous necessity. In 4 Cooley, Briefs on Ins., 3158, in reference to these and like cases, it is said: "The underlying theory seems to be that the acts of the insured were wholly natural and voluntary, so as to exclude the idea of accident." In *Payne* v. *Fraternal Accident Assn., etc.* (1903), 119 Iowa, 342, 93 N. W. 361, it is said that an accident "means a result, the inducing cause for which was not put in motion by the voluntary and intentional act of the person injured. * * * *Follis* v. *United States Mut., etc., Assn.* [1895], 94 Iowa 435, 62 N. W. 807, 28 L. R. A. 78, 58 Am. St. 408; *Matthes* v. *Imperial Accident Assn.* [1900], 110 Iowa 222, 81 N. W. 484; *Marx* v. *Travelers Ins. Co.* [1889], 39 Fed. 321."

The following cases hold, as do the decisions in this State, that the result, though unexpected, is not an accident within the meaning of an accident insurance policy providing for liability on death of insured by accidental means. The means or cause must be accidental. In these cases it is held that death resulting from voluntary physical exertion or from intentional acts on the part of the insured is not accidental and not within the meaning of the contract like the one under consideration. Nor is disease or death caused by the vicissitudes of climate or atmosphere the result of an accident. *Sinclair* v. *Maritime, etc., Assur. Co.* (1861), 3 El. & El. *478; *Dozier* v. *Fidelity & Casualty Co.* (1891), 46 Fed. 446, 13 L. R. A. 114; *United States Mut. Accident Assn.* v. *Barry* (1889), 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60; *Appel* v. *Aetna Life Ins. Co, supra; Cobb* v. *Preferred Mut. Accident Assn., supra; Feder* v. *Iowa State, etc., Assn., supra; McCarthy* v. *Travelers Ins. Co., supra; Southard* v. *Railway, etc., Assur. Co., supra; Smouse* v. *Iowa State, etc., Assn., supra; Niskern* v. *United Brotherhood, etc., supra.* If the result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental

means; but if, in the act which precedes the injury, something unforeseen or unusual occurs which produces the injury, then the injury has resulted through accidental means. *Standard Life, etc., Ins. Co.* v. *Schmaltz, supra; Southard* v. *Railway, etc., Assur. Co., supra.*

The means which brought about the death of the insured were the rarefied atmosphere, the physical exertion in climbing the steps to the hotel, and carrying heavy satchels.

6.    He died from doing what he intended to do, although the result was not anticipated. There is no claim that there is an element of accident in the atmosphere of Colorado, or the manner in which the insured reached the hotel. Thus, as is said in *Shanberg* v. *Fidelity & Casualty Co., etc.* (1907), 158 Fed. 1, 85 C. C. A. 343 (affirming *Shanberg* v. *Fidelity & Casualty Co., etc.* [1905], 143 Fed. 651), where the holder of an accident insurance policy, while assisting in carrying a door along a level street, said that he was tired, and suddenly fell down and died, the death, ascertained by an autopsy to have resulted from a rupture of the heart, which was very badly diseased, was not the result of any injury sustained from extraordinary, violent and accidental means, independent of all other causes, within the meaning of the policy. The court, at page 5, said: ''It would not help the matter to call the injury itself—that is, the rupture of the heart—an accident. That was the result, and not the means through which it was effected. * * * He engaged in carrying this door for his own convenience; he encountered no obstacle in doing so; he accomplished just what he intended to, in the way he intended to, and in the free exercise of his choice. No accident of any kind interfered with his movements, or for an instant relaxed his self-control.'' We feel warranted, because of the plainness with which the distinction is drawn between ''an accident'' and ''accidental means,'' to quote from *Clidero* v. *Scottish Accident Ins. Co.* (1892), 29 Scot. Law Rep. 303. In that case the person who was insured against death from ''bodily in-

jury caused by violent, accidental, external and visible means" had just risen from bed, and was in the act of pulling on his stocking, when "he felt something give way in his inside," and shortly afterward died. Lord Adam, in the course of his opinion, said, at page 307: "The question, in the sense of this policy, is not whether death was the result of accident in the sense that it was a death which was not foreseen or anticipated. That is not the question. The question is, in the words of this policy, whether the means by which the injury was caused were accidental means. The death being accidental in the sense in which I have mentioned, and the means which led to the death as accidental, are to my mind two quite different things. A person may do certain acts, the result of which acts may produce unforeseen consequences, and may produce what is commonly called accidental death, but the means are exactly what the man intended to use, and did use, and was prepared to use. * * * I cannot think that that falls within the description in this policy, that death resulted from violent, accidental, external and visible means." See, also, Lord M'Laren's opinion on page 308.

A death may in a sense be "an accident" or "accidental," that is, a death or injury may be a result not intended, but may or may not be occasioned by accidental means. Thus, it is said in 3 Joyce, Insurance, §2863: " 'A person may do certain acts the result of which acts may produce unforeseen consequences and may produce what is commonly called accidental death, but the means are exactly what the man intended to use, and did use, and was prepared to use. The means were not accidental, but the result might be accidental.' " And so, in the case at bar, without attempting to harmonize all the cases that cannot be distinguished, we hold that the means which produced the death of the insured were not accidental.

Judgment affirmed.