ANNA CAMPBELL, Appellant, v. AETNA LIFE INSURANCE COMPANY OF HARTFORD, CONNECTICUT.

Division Two, June 4, 1920.

1. **LEX LOCI:** Accident Insurance. The insurance policies having been issued and delivered in California, and the insured being at all times a resident of that state, the law of California must be applied in construing the contracts.

2. **ACCIDENT INSURANCE: Necessary Showing: Strain.** In a suit on an accident insurance policy governed by the law of California, the burden is on plaintiff to prove that the insured's death was caused by (a) the incident depended upon; (b) that the movement or strain of the deceased which caused the rupture in his liver from which he bled to death was not intentional but accidental;

and (c) that this accidental injury resulted in death "directly and independently of all other causes" as that phrase is construed in that state; and though the evidence seems sufficient to establish the first two, unless it is sufficient to establish the third a demurrer to the evidence should be sustained.

3. ———: Independently of All Other Causes. Under the California law, death is not the result of bodily injury sustained through accidental means "directly and independently of all other causes," where the insured, who was afflicted with cancer of the liver, died from blood hemorrhage caused by a rupture of the malignant tumor produced by a strenuous exertion or violent strain in attempting to recover a ball on golf links. If at the time the insured sustained the accident he was afflicted with a pre-existing disease, and the accident would not have caused his death had he not been afflicted with the disease, but he died because the accident aggravated the effects of the disease, or the disease accelerated the effects of the accident, under the law of California, the accidental injury did not result in his death "directly and independently of all other causes." Under that law there can be no recovery on an accident policy containing those words for death caused partly by accident and partly by disease.

4. ———: California Law: Subsequent Decisions. The Supreme Court has a right to consider the later decisions of California construing the decisions of that state put in evidence in the trial of the case.

Appeal from St. Louis City Circuit Court.—*Hon. Kent K. Koerner*, Judge.

A_FFIRMED_.

*Bryan, Williams & Cave* for appellant.

(1) The court erred in directing a verdict for the defendant. (a) There is evidence tending to show that the rupture of the liver, the consequent hemorrhage, and death, was caused by the unusual and unintended exertion of the insured in the golf game. That it was so caused plaintiff is not required to prove by direct proof, but this may be inferred from the facts and the circumstances, and from opinion of experts. And there is some probative force in mere sequence, without the intervention of independent causes, irrespective of the time which elapses between cause and effect. Laessig v. Travelers'

Protective Assn., 169 Mo. 272, 11 C. J. 36; Driskell v. Ins. Co., 117 Mo. App. 362; McDonald v. Railroad, 219 Mo. 468. (b) The evidence is sufficient to take the case to the jury on the question as to whether these exertions caused the rupture, followed by the hemorrhage and death. Fetter v. Fidelity Co., 174 Mo. 256; Summers v. Fidelity Assn., 84 Mo. App. 605; Johnson v. Casualty Co., 122 Mo. App. 369; Young v. Ry., 113 Mo. App. 636; Hooper v. Ins. Co., 166 Mo. App. 209; Goodes v. Order United Comm. Travelers, 174 Mo. App. 330. (c) Such unusual and unintended exertions were "accidental means," within the terms of the policies under the Missouri decisions, which hold that an injury is accidental when the effect produced is not the natural and probable consequences of the means which produced it. Fetter v. Casualty Co., 174 Mo. 256; Summers v. Fidelity Assn., 84 Mo. App. 605; Driskell v. Ins. Co., 117 Mo. App. 362; Johnson v. Casualty Co., 122 Mo. App. 371; Young v. Ry. Mail Assn., 126 Mo. App. 335; Beile v. Protective Assn., 155 Mo. App. 629; Hooper v. Ins. Co., 166 Mo. App. 209; Goodes v. Order United Comm. Travelers, 174 Mo. App. 330; Wright v. Order United Comm. Travelers, 188 Mo. App. 457; Greenlee v. Casualty Co., 192 Mo. App. 303; Freeman v. Ins. Co., 195 S. W. 545. They are likewise "accidental means" under the California decisions which hold that an injury is caused by "accidental means" when there is some element of unexpectedness in the event which preceded the injury. Rock v. Ins. Co., 172 Cal. 462; Price v. Ins. Co., 169 Cal. 800. (d) The fact that the rupture would not have happened, but for the diseased condition of the insured, does not, under the Missouri decisions, make the disease the proximate cause of the death, and the accident remains the sole cause within the provisions of the policy. Fetters v. Casualty Co., 174 Mo. 256; Summers v. Fidelity Assn., 84 Mo. App. 605; Driskell v. Ins. Co., 117 Mo. App. 362; Johnson v. Casualty Co., 122 Mo. App. 369; Young v. Ry. Mail Assn., 126 Mo. App. 325; Beile v. Protective Assn., 155

Mo. App. 629; Baehr v. Casualty & Surety Co., 133 Mo. App. 541; Hooper v. Ins. Co., 166 Mo. App. 209; Goodes v. Order United Comm. Travelers, 174 Mo. App. 330; Greenlee v. Casualty Co., 192 Mo. App. 303. The California cases offered in evidence do not hold otherwise.

*Jones, Hocker, Sullivan & Angert* for respondent.

(1) The policies in suit having been delivered to and accepted by the insured in the State of California, of which state the insured was a citizen and resident, they are California contracts and are governed by the law of that state. Lukens v. Ins. Co., 269 Mo. 574. (2) Under the law of California an injury which is the result of an intended act on the part of the insured is not effected through "accidental means." Rock v. Travelers' Ins. Co., 172 Cal. 462, 156 Pac. 1029; Price v. Occidental Ins. Co., 169 Cal. 800, 147 Pac. 1175. (3) The burden of proof was upon the plaintiff to establish that the rupture of the tumor with which the insured was afflicted was sustained through accidental means. Price v. Occidental Ins. Co., 169 Cal. 800, 147 Pac. 1175; Laessig v. Travelers' Ins. Co., 169 Mo. 279; Brunswick v. Ins. Co., 213 S. W. 45. (4) The insurer is not liable where the injury might have been the result of two or more causes, for one of which the insurer would be liable, and for the other of which the insurer would not be liable. Coin v. Lounge Co., 222 Mo. 488; Ins. Co. v. Murray, 90 S. E. 620; Carnes v. Iowa St. Traveling Men's Assn., 106 Iowa, 281. (5) Under the law of California there is no liability on the part of the insurer where a pre-existing disease contributes to or co-operates with an accidental injury to produce death. Clarke v. Casualty Co., 179 Pac. 195; Kellner v. Travelers' Ins. Co., 181 Pac. 61; Price v. Occidental Ins. Co., 169 Cal. 800.

WHITE, C.—This suit is brought to collect insurance on the life of plaintiff's deceased husband, Joseph C. Campbell. The petition filed in the Circuit Court

of the City of St. Louis is in two counts, each based upon an accident policy which contains the usual stipulation in accident policies, as follows:

"Against loss, as herein defined, resulting directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means, suicide (sane or insane) not included."

The answer in each count contains a general denial, and for a further defense alleges that Joseph C. Campbell was, at the time of the issuance and execution of each of the policies mentioned in the petition, a citizen of the State of California, and continued so at all times until his death; and that each of the policies mentioned in the petition became operative and in force in California and every premium was paid in California; that there was in force in the State of California the following statute:

"Sec. 4468. The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this State, is the rule of decision in all the courts of this State."

The answer then proceeds:

"And that at the time of the death of the said Joseph C. Campbell he was afflicted with cirrhosis of the liver, cancer of the liver and a cancerous tumor of the liver; that the immediate cause of his death was hemorrhage resulting from a rupture of said cancerous tumor; that if the insured suffered any accidental occurrence which contributed to cause said rupture (which the defendant denies), nevertheless said cirrhosis, cancer and cancerous tumor also directly contributed thereto."

The allegation follows that under the law of California the manner of the insured's death was not accidental within the meaning of the policies.

Campbell died at San Francisco July 1, 1915, at the age of sixty-three years. He was a lawyer with a large practice. On June 4th, preceding his death,

his son Robert Campbell, arrived from Chicago on a visit
to San Francisco. Saturday, June 5th, Joseph Camp-
bell and his son played golf in the forenoon. The
insured played hard, he was a strenuous player and
strenuous in everything he undertook; he strained
hard in making his strokes, was awkward about it—
an inexperienced player. On Sunday forenoon, June
6th, Campbell and his son again played golf, eighteen
holes. After they had played to about the middle
of the second nine, Campbell's ball lodged in a bunker
toward the top. He took his mashie and stepped up
to the side of the bunker to make a stroke and was
thrown off his balance by catching his foot in some-
thing, so that he almost fell, but by a violent effort
recovered his balance and continued the game. After
the game he took the usual shower and went home
with his son without making any complaint. The next
morning, Monday, June 7, he went to his office as
usual, still making no complaint. The son returned
Monday afternoon and found his father at home lying
on a settee. A doctor was called. Campbell com-
plained of distention of the stomach; for three or
four days he was in bed and lounged around the
house. On Wednesday, June 9th, his abdomen became
very much distended; his physician introduced a canula
in the lower part of his abdomen and drew off eight
quarts of fluid, 15 per cent blood. This operation was
repeated three or four times until about forty quarts of
fluid were drawn off. Campbell continued to grow
weaker from day to day and finally died July first.
An autopsy showed that his aorta and arterial circula-
tory system was diseased, but not seriously; his pan-
creas was shrunken and atrophied; the spleen con-
siderably enlarged, twice its normal size; his liver was
contracted to one-half or three-fourths its normal size;
there was cirrhosis of the liver, and on the right lobe
was a tumor about four inches in its greatest diameter;
it is described as a primary carcinoma—cancer of the
liver, a malignant tumor. This tumor showed necrosis;

on it was a nodule projecting sufficiently to cause fric-tion against the adjacent parts of the body in case of movement; a piece of this projecting nodule was broken off, and that rupture, in the opinion of the phy-sicians, caused insured to bleed to death. No other disturbance or condition of the internal organs was apparent to account for the hemorrhages.

The defendant introduced in evidence two Cali-fornia decisions: Rock v. Travelers' Insurance Co., 172 Cal. 462-468; Price v. Insurance Company, 169 California, 800 to 803. The plaintiff in rebuttal offered a number of California decisions. Upon this evidence the court instructed the jury that under the law of the State of California as applied to the case plaintiff was not entitled to recover and directed a virdict for defendant. The verdict was accordingly returned and judgment rendered for the defendant, from which the plaintiff appealed to this court.

I. The policies having been issued and delivered in the State of California, of which State the insured was a resident at all times, the law of Califor-nia must be applied in the construction of the contracts.

*California Law.*

Three principal propositions are formulated by the respondent, claiming either to be sufficient to defeat recovery.

First, that there is no sufficient proof that the rup-ture and consequent hemorrhage which caused death was the result of the strain in the golf game when the de-ceased attempted to get his ball off the bunker.

Second, the rupture, if caused by the exertion at that time was not through "accidental means;" and, under the law of California as shown by the decisions introduced in evidence, the exertion which produced the rupture, if it was so produced, was an intended act and not an accidental one within the meaning of the policy.

Third, under the law of California there is no liability on the part of the insured against accidents

where pre-existing disease contributes to or cooperates with an accidental injury to produce the injury. In this case a cancer of the liver was a pre-existing disease and a contributing cause; therefore the death was not "effected solely" through the accident.

Under the law of California there is no doubt that the burden was on the plaintiff to prove the death was caused by, (a) the incident in the bunker; (b) that the movement, effort or strain of the deceased which caused the rupture was not intentional but accidental; and (c) that this accidental injury resulted in death "directly and independently of all other causes" as that phrase is understood and construed by the California court.

If the plaintiff has failed to establish either one of the above propositions the demurrer to the evidence was properly sustained. Without determining, we may say it *seems* that the first two were sufficiently established; that there was sufficient evidence to go to the jury tending to show the rupture and hemorrhage were caused by the strain on the golf links, and that the exertion of the deceased to recover his balance was accidental and not an intentional movement.

II. It remains then to inquire whether the death was produced by that accident "independently of all other causes." That the rupture was the immediate cause of the insured's death there is no doubt, and that the rupture would not have occurred but for the existence of the cancerous tumor is equally certain.

*Accidental Means.*

Under the Missouri decisions, if the rulings in Missouri should be applied, there is no doubt but the evidence was sufficient to submit that issue to the jury. [Fetter v. Fidelity & Casualty Co., 174 Mo. 256, l. c. 267; Beile v. Protective Assn., 155 Mo. App. 629, l. c. 646; Young v. Railway Mail Assn., 126 Mo. App. 325.]

It was said in the Beile case: "The fact that the physical infirmity of the victim may be a necessary con-

dition to the result does not deprive the injury of its distinction as the sole producing cause.''

Accident insurance, so far as the record in this case shows, is issued without regard or inquiry as to the physical condition of the insured, whether it is one which makes him more susceptible to a certain class of accidents than ordinary or not. An accident policy is issued to a one-legged man the same as to one who has two legs, although he may be likely to receive injury from some kinds of accidents which a two-legged man would not so easily incur. It is not shown that knowledge by the insurer of the existence of a cancerous liver would have prevented the issuance of the policies, although that condition necessarily made insured more susceptible to certain kinds of accidental injury; for instance, the injury which he actually received. The accident which thereafter produced his death is exactly what the contract insures against, whatever the conditions of the insured may have been which made the injury possible. Such is the Missouri rule. The Missouri rule is mentioned here because cited and disapproved by the California courts.

Since the law of California must apply to the case it is necessary to ascertain just what the common law rule in California is in construing contracts of this character.

In the case of Price v. Occidental Life Ins. Co., introduced in evidence by the defendant, the court said, 169 Cal. 802: ''In order to recover, the plaintiff was bound to allege and prove an injury of the kind covered by the contract.''

And in the case of Rock v. Travelers' Ins. Co., 172 Cal. l. c. 466, the court makes the following statement as the approved rule in that state:

''We shall not take the time to review in detail the facts of the cases we have cited. It will suffice to say, by way of illustration, that among them are decisions holding that death was not the result of bodily injury sustained through accidental means where an insured who

was afflicted with tuberculosis died from a hemorrhage occasioned by a ruptured artery, the rupture of the artery being due to the act of the insured in standing on a chair and reaching out to close the shutter of a window (Feder v. Iowa State Assn., 107 Iowa, 538, 70 Am. St. 212, 43 L. R. A. 693, 78 N. W. 252), or where the insured, convalescing from an attack of pneumonia, arose, and in attempting to remove his nightshirt made a more or less violent effort, which caused the rupture of a blood vessel resulting in his death (Smouse v. Iowa State Assn., supra), or where the insured died of appendicitis, caused, as the evidence tended to show, by his riding a bicycle over a rough road (Appel v. Aetna Life Ins. Co., 86 App. Div. 83, 83 N. Y. Supp. 238), or where the insured went to Colorado Springs and ascended the stairs of a hotel carrying in each hand a traveling bag, his death resulting from paralysis of the heart caused by the high altitude and the strain of his exertions. [Schmid v. Indiana Assn., 42 Ind. App. 483, 85 N. E. 1032.]

In this connection the court cites some Missouri cases including the Beile case, supra, and distinctly repudiates the Missouri doctrine.

It may be said that the Price case and the Rock case introduced in evidence turn upon the question as to whether the death of insured was through "accidental means" and not in construing the phrase "independently of all other causes." Nevertheless the statement quoted from the Rock case shows the general principle announced by that court as applied to the latter proposition.

The court in the Price case cites with approval the case of National Masonic Acc. Assn. v. Shryock, 73 Fed. 774, in support of the position taken, so that the Shryock case must be understood as expressing the proper rule to be followed by the courts of California; where the opinion says, l. c. 775-776:

"The burden of proof was upon the defendant in error to establish the facts that William B. Shryock

sustained an accident, and that that accident was the sole cause of his death independently of all other causes. If Shryock suffered such an accident, and his death was caused by that alone, the association agreed by this certificate to pay the promised idemnity. But if he was affected. with a disease or bodily infirmity which caused his death, the association was not liable under this certificate, whether he also suffered an accident or not. If he sustained an accident, but at the time it occurred he was suffering from a pre-existing disease or bodily infirmity, and if the accident would not have caused his death if he had not been affected with the disease or infirmity, but he died because the accident aggravated the effects of the disease, or the disease aggravated the effects of the accident, the express contract was that the association should not be liable for the amount of this insurance. The death in such a case would not be the result of the accident alone, but it would be caused partly by the disease and partly by the accident, and the contract exempted the association from liability therefor.''

The Price case and the Rock case have been cited and construed by later decisions of the California Supreme Court. In Kellner v. Travelers' Ins. Co., 181 Pac. 61, the court holds, citing the Rock and Price cases, l. c. 63, that the burden is on the plaintiff to prove that the injury and the death were caused by an accident independently of any disease or diseased condition. Kellner, the insured, had had an operation for appendicitis and two subsequent operations for hernia. He tripped on a rug in his office and fell, producing strangulated hernia from which he died in a short time. One physician testified that the fall forced a large part of the intestine through the weak spot in the abdominal wall so as to become strangulated and cause his death; another physician testified that there must have been a hernia sac existing before the time of the accident; that the fall alone could not have produced the result at the time. That issue was submitted to the jury on

that evidence and the jury found for the defendant. The judgment was affirmed.

An instruction was asked by plaintiff to the effect that if the jury "believed the fall was the 'sole and only direct cause' of Mr. Kellner's death, they must find for the plaintiff, notwithstanding a further belief that in previous years deceased may have had a reducible hernia, provided they further find that 'said Ernest F. Kellner would not have died at the time, under the circumstances, and in the manner he did die had it not been for said accident and fall.'" (L. c. 62.) This instruction, the court held, did not properly declare the law, and said:

"The last part of the offered instruction would ignore this part of the contract and make the criterion of recovery the shortening by the accident of the life of a person assured without any reference to the possible concurrence of disease in producing death. The court correctly instructed the jury that there could be no recovery under the policy for death caused partly by disease and partly by accidental injury."

The Supreme Court of California also in the case of Clarke v. New Amsterdam Casualty Co., 179 Pac. 195, passed upon this same question. In that case Clarke, the insured, while crossing a street was struck by an automobile and incurred severe concussion of the brain. He was later operated upon for appendicitis and died in about a month. The immediate cause of his death was a disease of the heart, acute myocarditis. There was a verdict for the plaintiff and the judgment was affirmed; but the court in considering the law of the case said, l. c. 196: "The court instructed the jury that if disease plays a part in the death of an assured person after an accident, it is essential to recovery that such disease was due to the accident." This was held to be a correct instruction. And further the jury were instructed; "If you shall find that the death was caused in part by the heart disease, and that this heart disease was not in fact caused by this

accident, your verdict must be for the defendant." And this was held to state the rule correctly. There was evidence by physicians to the effect that the heart disease was due to the lowered resistance caused by the concussion of the brain; that is, it was caused directly by the accident. In further commenting upon it, after citing a Federal case, the court said, l. c. 197:

"In that case the jurors were told, in effect, that although death might have resulted from two concurring causes—one being the injury and the other being pre-existing diabetes—the plaintiff would nevertheless be entitled to recover. This, very properly, was held to be error. But in the present case the theory of the plaintiff, supported by the testimony which the jurors are entitled to accept, was that no heart disease existed before the accident, and that both appendicitis and myocarditis were the result of the injury itself."

The court further said on page 198:

"Undoubtedly, death from any independent cause, whether existing prior to or supervening at a time subsequent to the accident, would defeat the claim of plaintiff, but the instruction was dealing with one phase of the problem, merely, the existence or nonexistence of disease prior to the accident."

Appellant objects to a consideration of the decision in the Kellner case and the Clarke case, because they were not introduced in evidence, and would have us reverse the judgment and remand the case for trial so that the defendant upon another trial could introduce them in evidence when the court would again have to direct a nonsuit.

While it may be said that the Price case and the Rock case are not as clear as they might be in expressing the rule subsequently stated by the California Supreme Court, still by reference to the Federal case cited and approved, the rule may be very well ascertained from those cases. This court has a right to consider the later decisions of the California Supreme Court in construing the cases which were offered in evidence.

In each of those later cases the issues were submitted to a jury because there was a conflict of evidence as to whether the pre-existing disease contributed to the death and whether in fact there was a pre-existing disease. In the present case there is no question of the existence of the malignant tumor growing on the liver of Campbell at the time of the accident. It is not contended that the fatal rupture without the existence of the tumor could have been caused by a strain of the kind mentioned in the evidence. In other words it is undisputed that Campbell would not have met his death by the hemorrhage and there would have been no hemorrhage if the cancer hadn't been there; just as in the Kellner case there would have been no injury but for the existence of hernia, as the jury found. The only difference between the two cases is that the evidence was conflicting as to whether the hernia existed before the accident or was produced by it in the Kellner case; whereas, in this case, it is undisputed that the cancer existed before the accident. If it had been conceded in the Kellner case that there was hernia and a protruding intestine at the time he stumbled upon the carpet, although death was immediately produced by the accident, there would have been nothing to submit to the jury. In the Clark case the issue was submitted to the jury because there was evidence *pro* and *con* as to whether the heart disease from which death ensued was caused by the accident and concussion of the brain or whether it existed before and was simply aggravated by that accident. Under the California rule it is clear that the plaintiff was not entitled to recover.

The judgment is affirmed. *Mozley, C.,* concurs; *Railey, C.,* not sitting.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.