MARLOWE *v.* HURON MOUNTAIN CLUB.

1. WORKMEN'S COMPENSATION—FORTUITOUS NATURE OF INJURY.
   In order that there may be a recovery of compensation under the workmen's compensation act there must be shown to have been a fortuitous or unexpected injury occurring during employment.

2. SAME—STROKE OF APOPLEXY—TRUCKER.
   Total disability of an employee following stroke of apoplexy suffered while handling two heavy mail sacks as part of services he performed as truck driver for club was not accidental within the meaning of the workmen's compensation act in the absence of evidence of any unusual, unexpected or violent movements due to miscalculation or chance on his part which caused the injury.

3. SAME—MEDICAL EXPENSES—PAYMENT.
   Amount already paid for medical expenses by employer should not be included in award against him under the workmen's compensation act.

Appeal from Department of Labor and Industry. Submitted January 18, 1935. (Docket No. 139, Calendar No. 38,069.) Decided April 8, 1935. Rehearing denied May 17, 1935.

Phillip Marlowe presented his claim for compensation against Huron Mountain Club, employer, and Travelers Insurance Company, insurer, for an accidental injury sustained in defendant's employ. Award to plaintiff. Defendants appeal. Reversed.

*Daniel P. O'Brien,* for plaintiff.

*Miller, Eldredge & Eldredge,* for defendants.

POTTER, C. J. Plaintiff, 37 years of age, and prior to the happening of the events out of which this case arose apparently a strong, able-bodied man, was employed by the Huron Mountain Club as a truck driver, handling baggage and supplies, and during part of the year handling the mail to and from the railroad depots at Big Bay and Marquette. In the usual and ordinary course of his employment, he handled trunks weighing 200 pounds and more; laundry baskets as heavy; coal in bags, weighing approximately 80 pounds each; quarters of beef; ice cream freezers; groceries; and other supplies. September 5, 1932, he suffered a stroke of apoplexy, resulting in partial paralysis and total disability. On the day in question, plaintiff went to Marquette in the morning and returned to Big Bay where he met one Krieg who in the summer handled the club mail. Krieg was to be delayed at Big Bay awaiting reservations for club members, and to avoid delay in delivery of the club mail suggested plaintiff take the mail to the club; whereupon it was loaded on plaintiff's truck, and plaintiff went to the club house about 10 miles from Big Bay. There were six or

seven mail sacks and plaintiff unloaded and delivered these sacks at the club. On the last trip to the truck, he handled two heavy mail sacks and while doing so suddenly collapsed and the mail sacks fell to the floor.

The sole question is whether there was evidence plaintiff received a personal injury arising out of and in the course of his employment. Was there any evidence that plaintiff's injury was the result of an accident, or was the injury suffered one arising from the usual occurrences in employment, one which was the result of plaintiff's physical condition and due neither to his employment nor to accident?

Plaintiff suffered from a stroke of apoplexy not expected and probably unthought of—an unexpected occurrence which produced injury. He voluntarily took the mail sacks at Big Bay on his truck for delivery at the club house. His doing so was either within or without the scope of his employment. If plaintiff is to recover at all, it must be conceded his taking and delivery of these mail sacks was within the scope of his employment. If the taking at Big Bay and delivery at the club house of these mail sacks of the Huron Mountain Club was within the scope of his employment, the question arises whether he suffered an accident arising out of and in the course of his employment. Plaintiff was a strong and apparently able-bodied and reliable man and to the casual observer appeared in good health. In accepting and delivering these mail sacks, he was doing and performing the precise services he desired and intended to do. The manner of handling these mail sacks was in plaintiff's discretion. There is no proof he stumbled, slipped, fell or suffered any undue or unexpected strain, or

did anything which compelled him to make unexpected or violent movements due to any miscalculation or chance on his part. He received no blow, jar or shock of any kind, expected or unexpected, and there was nothing unusual or out of the ordinary in his handling of the mail sacks, and certainly nothing which suggested, dictated or directed he should carry two of them at a time.

It is conceded if there is any evidence to support the claim of accidental injury within the meaning of the statute, he is entitled to recover. Many cases are cited to sustain the finding of the department of labor and industry; and there are an equal number of cases cited to indicate he is not entitled to recover.

In *Schroetke* v. *Jackson-Church Co.,* 193 Mich. 616 (L. R. A. 1916 D, 64), it is said the Michigan act was borrowed from the English act, and it was necessary to determine what was personal injury by death or by accident. The court quoted with approval *Hensey* v. *White* (1900), 1 Q. B. Div. 481 (69 L. J. Q. B. 188, 81 L. T. 767), where it was said "the idea of something fortuitous and unexpected is involved in both words 'peril' or 'accident;'" and *Fenton* v. *Thorley & Co.,* 72 L. J. K. B. Div. (N. S.) 788, 790 (89 L. T. 314), where it was said the expression "accident" denoted an unlooked for mishap, or an untoward event which is not expected or designed.

In *Sinkiewicz* v. *Lee & Cady,* 254 Mich. 218, the commission pointed to no direct evidence as to how decedent received his injury. Plaintiff's decedent was found lying on a bag of sugar on the premises of the employer and it was necessary to remove him to his home. He was operated on the next day for peritonitis, and died a few days later. This peri-

tonitis might have been brought on by trauma. It was said:

"Do these circumstances justify the inference that his condition was due to an accident? We think not. But it is not necessary to indulge in inferences as to what caused the injury. There is direct evidence of it. He told his foreman that he had hurt himself lifting a bag of sugar. If he injured himself in that way, and there is no evidence direct or circumstantial to the contrary, he did not suffer an accidental injury within the meaning of the compensation law. He was injured while doing the work he was employed to do and doing it in the usual manner. To justify compensation for accidental injury, there must have been 'some unusual, fortuitous or unexpected happening which caused the injury and which was in essence accidental in character.' "

In *Stombaugh* v. *Peerless Wire Fence Co.,* 198 Mich. 445, compensation was denied for the death of an employee which occurred by reason of a rupture of the heart from straining during the handling of rolls of wire weighing from 150 to 160 pounds. The court said:

"The man died while doing the work he agreed to do, in the way he intended to do it. * * * There is no evidence of mischance or miscalculation in what was being done, none of anything fortuitous or unexpected in the manner of doing it."

In *Roach* v. *Kelsey Wheel Co.,* 200 Mich. 299, 307, it is said:

"The record is absolutely barren of any evidence that anything untoward or unusual happened in the course of his employment during any of the three days or that he exerted himself in any unusual manner or to an unusual degree. He was doing the

work which he and his associates were employed to do exactly in the manner they expected to do it."

Compensation was denied.

In *Kutschmar* v. *Briggs Manfg. Co.,* 197 Mich. 146 (L. R. A. 1918 B, 1133), compensation was denied for hernia resulting from lifting a bar weighing from 60 to 90 pounds by plaintiff in the usual course of his employment. In denying compensation, this court said:

"An employee who receives an injury in the nature of a hernia, while engaged in his usual and ordinary employment, without the intervention of any untoward or accidental happening, is not within the provisions of the compensation act."

Plaintiff was used to handling trunks that weighed more than 200 pounds, quarters of beef, sacks of coal and articles weighing much more than these mail sacks. We do not think there was anything unusual or fortuitous in the fact that on the occasion in question plaintiff suffered apoplexy resulting in paralysis. *Schmid* v. *Indiana Travelers Accident Ass'n,* 42 Ind. App. 483 (85 N. E. 1032); *Hastings* v. *Travelers' Ins. Co.,* 190 Fed. 258; *Shanberg* v. *Fidelity & Casualty Co. of N. Y.,* 85 C. C. A. 343 (158 Fed. 1, 19 L. R. A. [N. S.] 1206); *Cobb* v. *Preferred Mutual Accident Ass'n of New York,* 96 Ga. 818 (22 S. E. 976); *Niskern* v. *United Brotherhood of Carpenters & Joiners of America,* 93 App. Div. 364 (87 N. Y. Supp. 640).

The employer paid medical expenses of plaintiff to the extent of $208. Having been paid, we see no reason why this amount should have been included in the award for medical expenses. Award vacated.

NELSON SHARPE, NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.