# UNITED STATES FIDELITY & GUARANTY COMPANY
## et al. v. NEAL.

No. 12672. APRIL 15, 1939.    REHEARING DENIED MAY 10, 1939.

*John A. Dunaway, Bryan, Middlebrooks & Carter,* and *Yantis C. Mitchell,* for plaintiff in error.

*T. Reuben Burnside,* contra.

REID, Chief Justice. . Levin P. Neal, a member of a partnership composed of G. H. Malcom and himself, made claim against the partnership and the United States Fidelity & Guaranty Company before the Industrial Board of Georgia, for compensation under the workmen's compensation act. The theory of his claim was that he was employed by the partnership as a foreman in carrying out a contract by the partnership with the State of Georgia for the construction of a bridge on a State highway. For his services he was paid $30 per week. He testified, in part, as follows: "Q. You had that contract from the State Highway Department to build the bridge? A. Yes, sir. Q. Were you engaged in that work on or about the 25th of March, 1937? A. Yes, sir. Q. Were you acting in any other capacity than as a partner? A. As a general foreman. Q. Was that by separate agreement from your partnership agreement? A. Yes, sir. Q. Were you receiving special compensation for your work as foreman? A. Yes, sir. Q. How much? A. $30 a week. Q. The work you were doing as foreman would not have been required of you by the partnership agreement? A. No, sir. Q. So it took this special agreement of employment as a foreman in order to require you to perform the services which you were performing. A. Yes, sir." Claimant's partner, Mr. Malcom, testified, in part, as follows: "Q. As I understand, Mr. Neal was engaged on the job as foreman? A. Yes, sir. Q. At a salary of $30 a week? A. Yes, sir. Q. That was a separate agreement entirely from your partnership agreement? A. Yes, sir. Q. He received this com-

pensation, as I understand, as foreman? A. Yes, sir. Q. Which he would not have received as a result of the partnership agreement? A. That is right." On cross-examination this witness testified: "Q. Who hired Mr. Neal? . A. We had an agreement after we went into business that we would get a salary. Q. You had a partnership agreement; in other words, you two men got together and agreed to take out $30 a week apiece? A. Yes, sir." On redirect examination he testified: "Q. I want to ask you definitely whether or not Mr. Neal was drawing this compensation of $30 a week as foreman under an entirely separate and distinct contract from your partnership agreement? A. We had to have a foreman and superintendent. The Federal government made us put them on the pay-roll. We had to make an affidavit of their being paid every week. Q. It was a separate contract, was it? A. They required that of us. If we worked on the job, we had to have a foreman and superintendent. Q. Mr. Neal was the man who was employed as a foreman on the job? A. Yes, sir." It further appears from the evidence that Mr. Malcom, claimant's partner, took the other position, that is of superintendent, and likewise drew $30 a week therefor. The director found, in so far as important in the present appeal, as follows: "Director finds as a matter of fact, and concludes as a matter of law (See 47 *Ga. App.* 535), that at the time of the accident to Mr. Neal he was in fact a foreman employee of Malcom & Neal at a weekly wage of $30 under special agreement, and independent of his relationship in the partnership of Malcom & Neal, and was at the time of his accident performing services which were not incumbent upon him to perform in his capacity as a member of the partnership of Malcom & Neal, but a separate and independent undertaking."

The question presented is whether a partner who performs services on behalf of and within the scope of the business of the partnership can be considered an "employee" of the partnership, within the meaning of the provision that "'Employee' shall include every person in the service of another under any contract of hire or apprenticeship, written or implied, except one whose employment is not in the usual course of the trade, business, occupation, or profession of the employer" (Code, § 114-101), whether the services so rendered were performed by virtue of and pursuant to the original articles of partnership, or by virtue of a separate and independent

contract thereafter entered into between the partners, for which services such partner was to receive a stated compensation in addition to his share in the profits of the partnership. In their consideration of this question, the Court of Appeals held that while, as a general rule, the mere fact that a partner renders services in behalf of the partnership, for which he is paid a stated compensation, "is insufficient to establish the partner as a servant of the partnership, and is therefore insufficient to establish the fact that the partner is an employee of the partnership, as provided in the compensation act," yet where it appeared "that the services of the partner were such as were not required of him as a member of the partnership, or that the money paid him was not due to him as a member of the partnership," the industrial commission was authorized to find that he was an "employee" of the partnership. The general rule and exception thus stated and applied were obtained from a former decision of the Court of Appeals in *Chandler* v. *Harris*, 47 *Ga. App.* 535 (171 S. E. 174), wherein the court held that where a partnership operated two drug-stores, proof that the injured partner was manager of one of the stores and "looked after the business," and received from the partnership for his services $150 a month, was insufficient to establish such partner an employee of the partnership, it not appearing "that the services of the partner were such as were not required of him as a member of the partnership, or that the money paid him was not due to him as a member of the partnership."

The appellate courts of every State which have had occasion to consider the question presented, with one exception, have held broadly that a partner could not be an employee of the partnership, within the meaning of the workmen's compensation act. A clear statement of the rationale of these decisions is found in Cooper *v.* Industrial Accident Commission, 177 Cal. 685 (171 Pac. 684): "The workmen's compensation act clearly does not contemplate such a mixed relation as that existing between partners, wherein each member of the partnership is at the same time principal and agent, master and servant, employer and employee; and wherein each in any service he may render, whether under his general duty as a partner or under a special agreement for some particular service, is working for himself as much as for his associates in carrying on the business of the firm. The obvious intent of the act was

to substitute its procedure for the former methods of settling disputes arising between those occupying the strict relationship of master and servant, or employer and employee, by means of actions for damages. . . The law relative to compensation as between master and servant, or employer and employee, for injuries suffered by the latter, contemplates two persons standing in this opposed relation, and not the anomaly of one person occupying the dual relation of master and servant, employer and employee, plaintiff and defendant, person entitled to a judgment or award in his favor and person bound to pay a part thereof out of his own proportionate share of the partnership property, and the balance, amounting possibly to the whole thereof, out of his own individual estate. Evidently the workmen's compensation act did not contemplate these anomalies in its ample and detailed provisions for compensation to injured workmen and to those dependent upon them." See Ellis v. Ellis, 1 K. B. (Eng.) 324; LeClear v. Smith, 207 App. Div. 71 (202 N. Y. Supp. 514); McMillen v. Industrial Commission, 13 Ohio App. 310; Wallins Creek Lumber Co. v. Blanton, 228 Ky. 649 (15 S. W. 2d, 465); Gebers v. Murfreesboro Laundry Co., 159 Tenn. 51 (15 S. W. 2d, 737); Bowne v. Bowne Co., 221 N. Y. 28 (116 N. E. 364); Berger v. Fidelity Union Casualty Co. (Tex. Civ. App.), 293 S. W. 235, 237; Rockefeller v. Industrial Commission, 58 Utah, 124 (197 Pac. 1038); Employer's Liability Assurance Cor. v. Industrial Accident Commission, 187 Cal. 615 (203 Pac. 95); Lyle v. H. R. Lyle Cider & Vinegar Co., 243 N. Y. 257 (153 N. E. 67, 47 A. L. R. 840); In re W. A. Montgomery, 91 Ind. App. 21 (169 N. E. 879); Georgia Casualty Co. v. Smith, 222 Ky. 216 (300 S. W. 595); Peterson v. Department of Labor & Industries, 160 Wash. 454 (295 Pac. 172). In New York State the workmen's compensation act has been so amended as to provide for the issuance of employer insurance. In California the act has been so amended as to provide that "a working member of a partnership receiving wages irrespective of profits from such partnership shall be deemed an employee within the meaning," of the act.

The exception to this general current of authority, above alluded to, is the case of Ohio Drilling Co. v. State Industrial Commission, 86 Okla. 139 (207 Pac. 314, 25 A. L. R. 367). The headnote to that decision is as follows: "Where the business of a partnership is such as comes within the provisions of the workmen's compensa-

tion law of this State, which compels the partnership to comply with the provisions of the law requiring it to provide compensation for its injured employees by furnishing insurance in one of the ways provided for in the act, which was done by the partnership by contracting with an insurance company for that purpose, and where the partnership was composed of four members, who were the sole employees of such partnership in carrying on its business, and one of whom happened to be accidentally injured under circumstances that would entitle an employee who was not a member of the partnership to compensation, this likewise entitled the injured partner to compensation where the four members of the partnership performed all the labor incident to its business, and did not hire other employees to perform the labor, and where each member of the partnership drew the same wage, which was paid from the earnings of the partnership, and the net income from the business of the partnership was equally divided between the four members thereof,—the Industrial Commission was correct in holding that such injured employee was entitled to the compensation provided by the schedule of the act, and the order of the commission awarding such compensation should be affirmed." In the decision it was said: "We think that the construction of the workmen's compensation act that a member of a partnership who works for the partnership, and while so engaged is injured, is not an employee within the meaning of the act, is an exceedingly narrow construction of the act, where the sole reason therefor is that stated in the British case, supra (Ellis v. Ellis), that a member of the partnership can not place himself in the position of being a workman employed when he is one of the persons giving employment; and to so hold in the instant case would fail to satisfy the rule announced, that the act should be liberally construed so as to effect the legislative intent. We see no good reason why the members of a partnership can not jointly or severally perform the work or labor incident to the success of the joint undertaking, and at the same time draw wages from the earnings of the partnership." It must be admitted that, at most, this decision fails to answer some of the serious objections which present themselves, in holding that a partner may be an employee of the partnership within the meaning of the workmen's compensation act, and, as we shall presently attempt to show, is not only unsound and illogical, but the construction

there adopted can not be said to carry out the beneficent purposes intended to be effectuated by the adoption of the workmen's compensation act.

We fully recognize the principle that the workmen's compensation act is to be given a liberal construction, when necessary to effectuate its beneficent purposes. *Brown* v. *Lumbermen's Mutual Casualty Co.,* 49 *Ga. App.* 99, 101 (174 S. E. 359); *Van Treeck* v. *Travelers Insurance Co.,* 157 *Ga.* 204 (121 S. E. 215); *Pinkerton National Detective Agency* v. *Walker,* 30 *Ga. App.* 91 (117 S. E. 281); *Southern Cotton-Oil Co.* v. *McLain,* 49 *Ga. App.* 177, 181 (174 S. E. 726). This rule does not, however, authorize a construction beyond what appears to be the necessary meaning of its terms. Whether we look alone to the verbiage of the statute, or advert, in aid of interpretation, to the evils which brought forth its enactment and the ends sought to be attained, we are forced to the conclusion that the legislative body did not, in the enactment of this statute, contemplate that a copartner could be an employee of the partnership. The relationship of master and servant suggests at once a contract of service between two persons having a separate and independent existence in the eyes of the law. No man can be at one and the same time the master and the servant. Cf. *Tuck* v. *Moss Mfg. Co.,* 127 *Ga.* 729 (56 S. E. 1001). Out of the relationship of master and servant arise certain duties and liabilities between the parties. "The master is bound to exercise ordinary care in the selection of servants, and not to retain them after knowledge of incompetency; he shall use like care in furnishing machinery equal in kind to that in general use, and reasonably safe for all persons who operate it with ordinary care and diligence. If there are latent defects in machinery, or dangers incident to an employment, unknown to the servant, of which the master knows or ought to know, he shall give the servant warning in respect thereto." Code, § 66-301. Further, "In suits for injuries arising from the negligence of the master in failing to comply with the duties imposed by section 66-301, in order that the servant may recover it must appear that the master knew or ought to have known of the incompetency of the other servant, or of the defects or danger in the machinery supplied; and it must also appear that the servant injured did not know and had not equal means of knowing such fact, and by the exercise of ordinary care could not have known

thereof." § 66-303. It is the relationship to which the law appends the above duties, with which the workmen's compensation act is designed to deal. Primarily the partnership relationship is not consistent with the relation of master and servant or employer and employee. That is to say, if the relationship of master and servant exists between persons, this excludes the idea of the relationship of partners, and vice versa. A partner is at once a principal and an agent. "So far as he acts for himself and his own interest in the common concerns of the partnership, he may properly be deemed a principal; and so far as he acts for his partners, he may as properly be deemed an agent. The principal distinction between him and a mere agent is, that he has a community of interest with the other partners in the whole property and business and responsibilities of the partnership; whereas an agent, as such, has no interest in either." Story on Partnership, (7th ed.) 1. He can not maintain an action at law against the partnership, for the reason that he and the partnership can not be considered as separate and distinct. *Gilbert* v. *Crystal Fountain Lodge,* 80 *Ga.* 284 (4 S. E. 905, 12 Am. St. R. 255) ; see *Bennett* v. *Woolfolk,* 15 *Ga.* 213, 218; *Smith* v. *Carter,* 20 *Ga. App.* 391 (93 S. E. 44) ; *Miller* v. *Freeman,* 111 *Ga.* 654 (36 S. E. 961, 51 L. R. A. 504).

In the case of a partnership, who is the master who is bound to exercise care in the selection of servants and who is bound to furnish to the servants safe appliances and a safe place in which to work? To answer, the partnership, is but to say the individuals who compose it, who must necessarily act for it. Assuming, then, for the moment that a partner or the partners may perform the empty act of appointing each as servants of the partnership, considering the partnership as an entity apart from the individuals composing it, could it be that under the above sections either of the partners would have a claim against the assets of the partnership, as a servant against a master, because the other proved to be an incompetent servant and in the course of his duties injured the other, or because of injuries caused from defective appliances or an unsafe place to work? The answer is apparent, the reason being that the partners are the only persons who may perform the duties imposed upon the partnership as a master, and they could owe in this respect no duty to themselves, and certainly could make no complaint of their dereliction of duty on behalf of the partner-

ship. · The point is that the servant in such case equals the partner, and the partner equals the partnership; the result being that they are all one and the same. The impossibility of making the duties arising from the relationship of master and servant applicable to a partnership and the partners composing it demonstrates that the relationship can not be said to exist in such case. Turning to the very terms of the act itself, it seems that many absurdities obtrude themselves thereunder, if it be considered as contemplating that a partner may be an employee of the partnership. It is difficult to conceive of partners, as employers, giving themselves notice as employees, or vice versa, of intention to accept or reject the terms of the act, as provided for in the Code, § 114-201. The same may be said of the requirement of notice of the injury, provided for in § 114-303. Like anomalies will appear from a consideration of many of the other provisions of the act.

It is urged, however, that if it appears that at the time of the injury to himself the partner was rendering services which were not required of him as a member of the partnership, and that the moneys paid him for such services were not due to him as a member of the partnership, in rendering such services he is to be considered as a servant or employee of the partnership. We can not accept this view. It is true that in many instances the law considers a partnership an entity or "quasi person," and that a partner may contract with the partnership by making advances or for the performance of special services. Cf. *Maynard* v. *Maynard*, 147 *Ga.* 178 (93 S. E. 289, L. R. A. 1913A, 81) ; *Bishop* v. *Pendley*, 138 *Ga.* 738 (76 S. E. 63). However, a partner is no less a partner after contracting for and in the performance of special services in the line of the partnership business than he was before. In the performance of such services he acts for himself and the other partners composing the firm, for their common welfare, just as he did in the performance of services imposed upon him by virtue of the original articles of partnership. Such a contract can amount to no more than an amendment of the original articles of partnership —an additional agreement *between the partners*. The fact that the partnership was insured can not alter the case. The insurance provided under the act merely insures the liability of the employer, and is no greater. No question is presented, under the facts of the present case, of estoppel against the insurance company

to deny the existence of the relationship of Neal as servant or employee under the contract of insurance with the partnership. The construction that we have put upon the workmen's compensation act can not be said to violate any beneficent purpose sought to be attained by it. The act "is based on the broad economical theory that the compensation is properly chargeable as a part of the cost of industrial activity and production. It is founded on the basic principle that industry should be made to bear the financial losses sustained by the workmen engaged therein through personal injuries, and its purpose is to furnish a remedy that will reach every injury sustained by a workman engaged in that industry." *Brown* v. *Lumbermen's Mutual Casualty Co.*, supra. It is apparent that the legislature in enacting the workmen's compensation act did not intend to enforce compensation for injury to one, out of his own business and property. No law was or is necessary to accomplish this end. For the reasons stated, we are of the opinion that the judgment of the Court of Appeals affirming the award of the industrial board was erroneous.     *Judgment reversed.*

*All the Justices concur, except Duckworth J., who dissents.*