# LUMBERMEN'S MUTUAL CASUALTY CO. *v.* GRIGGS.

No. 13244.   MAY 17, 1940.

278

*Haas, Gambrell & Gardner,* for plaintiff in error.  *Neely, Marshall & Greene,* for persons at interest.

*Louis Geffen,* contra.

DUCKWORTH, Justice.  The controlling questions presented by the record are (1) whether the words "injury by accident" in the Code, § 114-102, embrace the rupture of a blood vessel without any external mishap or unexpected occurrence, and (2) whether such an injury is compensable when the employee has arteriosclerosis or high blood pressure.  These exact questions are now presented to this court for the first time, and their solution must be found in the interpretation of the statute, which is as follows: "'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form except where it results naturally and unavoidably from the accident."  Code, § 114-102.  Similar language in workmen's compensation statutes has been construed by the courts of many other jurisdictions.  Among the stronger cases holding contrary to the claimant is Meldrum *v.* Southard Feed & Mill Co., 229 Mo. App. 158 (74 S. W. 2d, 75), where the employee had been employed for five years, his work during the last two years consisting mainly of mixing molasses.  It was also a part of his regular duties to assist another employee in loading freight-cars two or three times a week.  At the time of the injury he was assisting the other employee in loading a car with meal sacks weighing 100 pounds each.  The two men carried these sacks from a conveyor belt and stacked them in the car, and each was required to handle five or six sacks per minute.  After performing this work

for twenty or thirty minutes in zero weather, the employee grabbed his chest and gasped for breath. He then staggered without assistance out to the dock where he was found in a "hunkered down" position. He was then carried home, where he died two days later. There was evidence that he suffered with a heart disease, but that his death was precipitated by the exposure and overexertion on the day in question. The court, in denying compensation, said: "There was evidence in this case that deceased's condition was due to overwork. But heavy work alone, causing exhaustion, a stroke or 'spell' unaccompanied by any mishap, abnormal occurrence or event, such as extra exertion, a strain or a blow, is not sufficient to constitute an accident within the meaning of the workmen's compensation act." It should be noted here that the workmen's compensation act of Missouri (section 3305(b), R. S. Mo. 1929, Mo. St. Ann. § 3305(b), p. 8238) provides that there can be no compensation unless the injury or death is caused by accident arising out of and in the course of employment. It defines the word "accident" to be "an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." The term "injury" is defined as "only violence to the physical structure of the body and such disease or infection as naturally results therefrom." It is also further declared that these terms shall in no sense except as therein provided be construed to include contagious or infectious diseases contracted during the course of the employment, nor shall they include death due to natural causes occurring while the workman is at work. The Missouri statute differs from the Georgia statute in defining the words "injury" and "accident."

In Marlowe v. Huron Mountain Club, 271 Mich. 107 (260 N. W. 130), the injured employee, an apparently strong, able-bodied man, thirty-seven years of age, was employed as a truck-driver, handling baggage and supplies, and during a part of the year handling mail to and from railroad depots. In the usual and ordinary course of his employment, he handled trunks and laundry baskets weighing two hundred pounds and more; bags of coal weighing about eighty pounds, quarters of beef, ice-cream freezers, groceries, and other supplies. One day he unloaded six or seven mail sacks; and on the last trip to the truck he handled two heavy mail sacks, and while doing so he suddenly collapsed, and the sacks

fell to the floor. He suffered from a stroke of apoplexy. The court held that the injury was not compensable, saying: "We do not think there was anything unusual or fortuitous in the fact that on the occasion in question plaintiff suffered apoplexy resulting in paralysis."

In Martin v. State Compensation Comr., 107 W. Va. 583 (149 S. E. 824), the employee, about fifty years of age and apparently in good health, was loading coal. With the assistance of his son-in-law he moved a loaded mine car weighing about two and a half tons a distance of forty feet. Just after moving the car he complained of a hurting in his chest, and sat down; and in about ten minutes he was seen gasping, and in a few minutes he died. From an autopsy it appeared that the employee's heart was greatly enlarged. The heart muscles had undergone fatty degeneration, and the doctors considered that the death was caused by disease. Compensation was denied by the commissioner, on the ground that death was caused by the heart disease, and not by injury. In the opinion the court said: "It is a very well-settled principle that an employee is not deprived of compensation because he is afflicted by some malady at the time he enters the employment. The act applies to every employee who suffers disability from accidental injury, and does not exclude the weak and those imperfect physically." After citing a number of authorities involving claims where the applicant was afflicted with heart disease, it was said: "It may be deduced therefrom that compensation will not be awarded where the employee has chronic heart trouble which has reached such a stage that death is liable to ensue at any time, from any exertion, and death came while he was doing the ordinary work of his employment." It should be remembered that the commissioner had determined the issues of fact, and that there was some evidence to support that finding. On this point the court said: "There is substantial evidence in the instant case to support the judgment of the compensation commissioner and that of the Appeal Board; and although we might have found a different conclusion from the evidence had we been called to do so, sitting in the first place, under the well-settled principle enumerated in many of our cases, illustrative of which is Judge Litz's opinion in Heaton v. Compensation Commissioner, 106 W. Va. 563, 146 S. E. 368, we will not disturb the finding of the Appeal Board." It is clear therefore

that this decision does not rule that the diseased condition of the employee required, as a matter of law, denial of compensation.

The recent cases of Fetrow v. Oliver Farm Equipment Sales Co., 132 Pa. Super. 39 (1 Atl. 2d, 249), and Orlando v. Pennsylvania R. Co., 133 Pa. Super. 588 (3 Atl. 2d, 220), are cited by the plaintiff in certiorari in support of the argument that compensation in the present case should be denied. In the former the employee suffered with a disease of his coronary vessels, and while engaged in his usual work of unloading farm implements was stricken with acute coronary thrombosis; and compensation was denied. In the latter the employee had a stomach ulcer which was perforated while he was performing his ordinary work; and compensation was denied. A number of courts of other jurisdictions have denied compensation in similar cases. A very strong case is that of Pierce v. Phelps Dodge Corporation, 42 Ariz. 436 (26 Pac. 2d, 1017), where the employee, a mine shift boss, at the noon hour ate his lunch, arose and walked a few hundred feet, and suddenly collapsed and died. There was no evidence that anything untoward happened, and after a post-mortem examination three doctors certified that in their opinion the death was due to natural causes, and that their diagnosis was that death was caused by acute dilation of the heart as the result of miocardial changes. The Industrial Commission denied compensation, saying: "The evidence is insufficient to establish that said deceased suffered any injury by accident arising out of and in the course of his said employment on or about said date; and the evidence is further insufficient to establish that said death was proximately the result of injury by accident arising out of and in the course of his employment." The evidence showed that the employee worked in a mine, which required him to do considerable walking through underground passages and to climb up and down ladders, which work he had been doing in the ordinary manner during the morning, without making any complaint. There was evidence that he had been informed by a physician that he was suffering from miocarditis, and that his death was accelerated at least to some degree by the ordinary and usual conditions of the work which he was required to do. The language of the Arizona statute is very similar to that of Georgia. In affirming the award of the Industrial commission, the court grounded its decision squarely on the proposition that there was

no unexpected event which caused the injury, which injury resulted in a disease or an aggravation thereof; that on the contrary the events preceding death and accelerating it were the usual, ordinary, necessary, and expected incidents of the occupation. This conclusion was reached by defining the term "injury by accident," and holding that the word "accident" as used in their statute implies that there must be an external act or occurrence which causes the injury or death, and that the word "accident" refers to the cause of the injury and not to the injury itself.

On the other hand, beginning with the English case of Fenton v. Thorley, (1903) A. C. 443, courts of other jurisdictions have construed similar provisions of workmen's compensation statutes to authorize compensation in such cases. In that case Fenton, the workman, was employed to look after a machine used in preparing food for cattle. The actual operation performed by the machine required six or eight minutes. At the end of that time the workman in charge moved a lever and then turned a wheel. On December 3, 1901, after finishing this operation, the wheel would not turn, and Fenton with another workman attempted to move the wheel; whereupon he felt something which he described as a tear in his inside, and he was ruptured. There was no evidence of any slip, or wrench, or sudden jerk. The injury occurred while he was engaged in his ordinary work, and in doing or trying to do the very thing which he meant to accomplish. The Court of Appeals held that the injury was not an "injury by accident," within the meaning of the workmen's compensation act of 1897. On review by the House of Lords, Lord MacNaghten said: "If a man, in lifting a weight or trying to move something not easily moved, were to strain a muscle, or rick his back, or rupture himself, the mishap in ordinary parlance would be described as an accident. . . It does seem to me extraordinary that anybody should suppose that when the advantage of insurance against accident at their employers' expense was being conferred on workmen, Parliament could have intended to exclude from the benefit of the act some injuries ordinarily described as 'accidents' which beyond all others merit favourable consideration in the interest of workmen and employers alike. A man injures himself by doing some stupid thing, and it is called an accident, and he gets the benefit of the insurance. . . A man injures himself suddenly and unexpectedly by throw-

ing all his might and all his strength and all his energy into his work by doing his very best and utmost for his employer, not sparing himself or taking thought of what may come upon him, and then he is to be told that his case is outside the act because he exerted himself deliberately, and there was an entire lack of the fortuitous element! I can not think that that is right." And further discussing the meaning of the words in the act "injury by accident," Lord MacNaghten said: "Now the expression 'injury by accident' seems to me to be a compound expression. The words 'by accident' are, I think, introduced parenthetically as it were to qualify the word 'injury,' confining it to a certain class of injuries, and excluding other classes, as, for instance, injuries by disease or injuries self-inflicted by design."

In the later case of Clover v. Hughes, (1910) A. C. 242, a workman suffering from serious aneurism was engaged in tightening a nut by a spanner, when he suddenly fell dead from a rupture of the aneurism. The county-court judge found, on conflicting evidence, that death was caused by a strain arising out of the ordinary work of the deceased operating upon a condition of the body which was such as to render the strain fatal. The House of Lords held that there was evidence to support the finding, and that it was a case of "personal injury by accident arising out of and in the course of the employment" within the workmen's compensation act of 1906. 6 Edw. 7, c. 58. In discussing whether the facts made a case of accident, Lord Chancellor Loreburn said: "The injury must be caused by an accident, and the accident must arise out of the employment. We are not concerned here with the course of employment. What, then, is an 'accident'? It has been defined in this House as 'an unlooked for mishap or an untoward event, which is not expected or designed.' . . Next, the accident must be one 'arising out of' the employment. There must be some relation of cause and effect between the employment and the accident, as well as between the accident and the injury. . . This man died from the rupture of an aneurism, and 'the death was caused by a strain arising out of the ordinary work of the deceased operating upon a condition of body which was such as to render the strain fatal.' Again, 'the aneurism was in such an advanced condition that it might have burst while the man was asleep, and very slight exertion, or strain would have been sufficient to bring about a rupture,'

.  . The first question here is whether or not the learned judge was entitled to regard the rupture as an 'accident' within the meaning of this act. In my opinion he was so entitled. Certainly it was an 'untoward event.' It was not designed. It was unexpected in what seems to me the relevant sense, namely, that a sensible man who knew the nature of the work would not have expected it. .  . No doubt the ordinary accident is associated with something external; the bursting of a boiler, or an explosion in a mine, for example. But it may be merely from the man's own miscalculation, such as tripping and falling. Or it may be due both to internal and external conditions, as if a seaman were to faint in the rigging and tumble into the sea. I think it may also be something going wrong within the human frame itself, such as the straining of a muscle or the breaking of a blood vessel. .  . I do not think we should attach any importance to the fact that there was no strain or exertion out of the ordinary. .  . If the degree of exertion beyond what is usual had to be considered in these cases, there must be some standard of exertion, varying in every trade. Nor do I think we should attach any importance to the fact that this man's health was as described. If the state of his health had to be considered, there must be some standard of health, varying, I suppose, with men of different ages." It was argued there, as it is argued in the present case, that if the act admits of a claim where the employee is diseased, compensation must be allowed in every case where disease kills an employee while he is at work, although the work had nothing to do with the injury or death. The answer to such argument is that to award compensation under the act there must be evidence to show that the employment contributed to the accident; and ultimately the case must turn on whether the disease, standing alone, caused the injury or whether it was caused in part at least by the work.

In Gilliland v. Ash Grove Lime &c. Co., 104 Kan. 771 (180 Pac. 793), the employment required the workman to break rock in a quarry with a sixteen-pound sledge and to load the rock into a car. At noon he was in apparent good health, and ate all of his lunch. In the afternoon while working, and shortly after he was seen beating a large rock with the sledge, he suffered a pulmonary hemorrhage from which he died before medical aid could reach him. He had been working in the quarry for several months, and

before that had worked for three years in the sacking department of a cement plant, an exceedingly dusty place. The injury occurred in November, 1916, and in July and August, 1915, the deceased was incapacitated for work for eight weeks on account of typhoid fever. In holding that the injury was compensable under Gen. Stat. 1915, § 5896, which is very similar to our own statute, the court said: "An 'accident' is simply an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force. . . Relating the hemorrhage to physical exertion, rupture of the pulmonary blood vessel by force from within was as distinctly traumatic as if the canal had been severed by the violent application of a sharp instrument from without. There was no direct evidence of extraordinary exertion suddenly displayed. When last observed, the deceased was working in the manner habitual to the employment. The fact remains, however, that an extraordinary and unforeseen thing suddenly and unpremeditatedly occurred; and presence of all the essential attributes of accident can not be gainsaid." The company there insisted that a sharp distinction must be made between "injury" as one thing and "accident" producing it as another thing. The holding of the Arizona court in Pierce v. Phelps Dodge Cor., supra, sustains this contention; and the Kansas court in ruling on the contention recognized that other courts had so held, and cited Fenton v. Thorley, supra, as authority for the ruling adverse to this contention. In ruling on the contention of the company that the workman died of disease, the court said: "It is not material that the workman's blood vessels were weakened by disease, or that he was predisposed to hemorrhage because, for example, he had breathed the dust of the sacking department for three years. The statute establishes no standard of health for workmen, entitling them or their dependents to compensation; and if the added factor of physical exertion in the employment were required to effect the lesion, and did so, the injury arose out of the employment."

A very able discussion of these questions is the opinion of the Supreme Court of Vermont in Giguere v. Whiting Co., 107 Vt. 151 (177 Atl. 313), where the facts showed that the duties of the employee for the last year consisted of lifting trays of fiber which were stacked at the end of a bench, the top of which was three feet

from the floor, onto the bench and spreading the fiber on it for use by another employee. The trays weighed from forty to sixty-five pounds. On the morning that the injury was sustained there were two stacks of trays about four feet high at the left end of the bench. He was lifting the trays from the second stack over the top of the first stack onto the bench. He had lifted about fifteen trays when he started to lift the bottom tray of the second stack which was on the floor. He was standing with his feet about three feet apart. He lifted the tray about eight inches from the floor when he felt a sharp pain on his left side. He received his hernia at that time. He kept lifting and put the tray on the bench. Then he stopped work for two or three minutes, because he was faint and his side was paining him. He worked the remainder of the day, although the pain continued to increase. He was doing his usual work in the usual and regular way. There was nothing out of the ordinary about his work that day. The workmen's compensation act of Vermont provides that an injury suffered by a workman must have accidental origin to be compensable, and must arise out of and in the course of his employment. The commissioner found that the claimant's injury arose out of and in the course of his employment, but he dismissed the case on the ground that the injury was not an "injury by accident" within the meaning of the statute. After reviewing a number of cases both in England and in this country, it was held that the injury was compensable under the statute, and the order of the commissioner was reversed. See, to the same effect, 71 C. J. 603, 610, §§ 358, 364; E. Baggot Co. v. Industrial Commission, 290 Ill. 530 (125 N. E. 254, 7 A. L. R. 1611); Patrick v. J. B. Ham Co., 119 Me. 510 (111 Atl. 912, 13 A. L. R. 427); Rockford Hotel Co. v. Industrial Commission, 300 Ill. 87 (132 N. E. 759, 19 A. L. R. 80); Gonier v. Chase Companies, 97 Conn. 46 (115 Atl. 677, 19 A. L. R. 83); Beck Mining Co. v. State Industrial Commission, 88 Okla. 34 (211 Pac. 69, 28 A. L. R. 197); Brown v. Nelson Co., 123 Me. 424 (123 Atl. 421, 60 A. L. R. 1293); Indian Creek Coal &c. Co. v. Calvert, 68 Ind. App. 474 (119 N. E. 519, 120 N. E. 709); Terre Haute Malleable &c. Co. v. Wehrle, 76 Ind. App. 656 (132 N. E. 698); Stringer v. Meese, 114 Kan. 716 (220 Pac. 168); Smith v. Department of Labor and Industries, 179 Wash. 501 (38 Pac. 2d, 212); Evans v. Cavanagh, 58 Idaho, 324 (73 Pac. 2d, 83); Bergagna v. Depart-

ment of Labor and Industries, 199 Wash. 263 (91 Pac. 2d, 551); Commercial Casualty Ins. Co. v. Hoage, 75 Fed. 2d, 677.

We turn now to the opinion in *Brown* v. *Lumbermen's Mutual Casualty Co.,* 49 *Ga. App.* 99 (174 S. E. 359), where the facts showed that the employee in the course of his employment merely stooped to pick up a tool, and without slipping or other external mishap suffered an injury to his knee; and it was held that the injury was compensable under our statute. But it is insisted by the plaintiff in error that the ruling in *Berkeley Granite Corporation* v. *Covington, supra,* is applicable to the facts in the present case, and would require a holding that the injury is not compensable. We do not think that decision applicable to the facts here involved, since this court was there dealing with a case where the employee was suffering with an "occupational disease." It was held that such an injury was not accidental, and was not compensable under the workmen's compensation statute, but that the employee was not prevented by the provisions of that statute from maintaining against his employer an ordinary or common-law action to recover for such injury or disease. That decision followed a similar ruling by this court in *Covington* v. *Berkeley Granite Cor.,* 182 *Ga.* 235 (184 S. E. 871); and a ruling to the same effect was made in *Simmons* v. *Etowah Monument Co.,* 42 *Ga. App.* 633 (supra). The questions here presented are what might be called border-line questions, and as shown in this opinion the decisions of other jurisdictions are in conflict. For this reason we have gone at length into an analysis of the cases on both sides, in order that this court, with the benefit of the reasons given for the respective rulings and in the light of that information, might reach a sound and fair decision on the questions presented. We must take our statute and construe it in the light of other decisions and according to our established rules of giving effect to the legislative intent when the same can be ascertained. *Atlantic Coast Line R. Co.* v. *State,* 135 *Ga.* 545 (69 S. E. 725, 32 L. R. A. (N. S.) 20); *Mayor &c. of Montezuma* v. *Brown,* 168 *Ga.* 1 (147 S. E. 80). With reference to this statute a liberal construction must be given, to effectuate the humane purposes for which it was enacted. *United States Fidelity & Guaranty Co.* v. *Neal,* 188 *Ga.* 105 (3 S. E. 2d, 80); *Pinkerton National Detective Agency* v. *Walker,* 30 *Ga. App.* 91 (117 S. E. 281);

*Brown* v. *Lumbermen's Mutual Casually Co.,* 49 *Ga. App.* 99, 101 (174 S. E. 359). It must be conceded that the legislature at the time it enacted the statute with which we are now dealing knew the broad meaning of the word "accident." Had it desired that this word be limited in its scope and confined to any particular types of accidents, it would, as it had the power and right to do, have so defined and restricted it. Not having done so, the unambiguous language of the act should not be changed by judicial interpretation.

While the act severely limits the maximum amount of recovery in a strong case of serious injury, and is in this respect beneficial to the employer, it was the manifest purpose of the legislature to distribute a portion of such savings to the unfortunate employee whose case is weak but who is injured nevertheless. The purpose of the act is to alleviate human suffering and to contribute to human need when accidental injury is suffered in the manner prescribed by the statute. To construe the plain language of this statute to embrace only those accidents that are external, and to exclude those that are internal, is to quibble with distinctions where there are no differences. If in the present case Griggs had been struck by one of the company's trucks in which the cement was being hauled and had suffered a rupture of the identical blood vessel, it could hardly be denied that his injury resulted from accident. Then what difference does it make that the rupture of this blood vessel was caused by force in the form of his exertion in performing his duties? In both cases the same injury is sustained. In both it results from force, and the two differ only in the nature of that force. This law was not enacted for the purpose of requiring compensation from the employer because of the remotest responsibility of the employer for the injury. Negligence or blame on the part of the employer is not an essential requisite to recovery. But it is insisted that claimant was diseased, was suffering with arteriosclerosis or high blood pressure; and that since this condition rendered him subject to the injury sustained, it is not compensable. Fortunately for the employee, perfect health is not a prerequisite to the enjoyment of the benefits of this statute. There is no standard of health set up or provided in this statute. To make physical perfection a condition for compensation would be well-nigh destructive of both industry and labor. There need be no apprehension that the allowance of

compensation where an existing ailment is accelerated by the employment would require compensation in those cases where injury or death happened during the hours of employment, but from natural causes uninfluenced by the employment. In every case, to authorize compensation there must be evidence to show that the accident grew out of and in the course of the employment; otherwise compensation will be denied. The evidence in this case authorized the industrial board to find that while Griggs was suffering from arteriosclerosis or high blood pressure, yet the exertion in the performance of his duties caused the rupture of the blood vessel, resulting in his paralysis. A vehicle may have some hidden defect and yet be able to carry a load for some distance. However, if the weight of such load finally causes the defective part of the vehicle to give way, there is a breakdown of the vehicle due to the weight of the load. Likewise, though claimant's blood pressure was high and the blood vessel was defective, yet he was able to perform his work until finally the strain of the work caused the rupture of the defective blood vessel and there was a breakdown or paralysis of his left limbs as a result of the load or pressure of his labor. In both cases there was an accident and injury or damage resulting from such accident. As a further demonstration of the correctness of our ruling, suppose instead of a blood vessel an arm or a leg of Griggs that was diseased and weakened, yet strong enough to stand up until the additional burden of lifting those sacks was placed upon him, and it had thereupon broken, could any reasonable argument be offered that he had not suffered an accident? The facts in the record make a case of injury by accident compensable under the Code, § 114-102.

*Judgment affirmed. All the Justices concur, except*

REID, Chief Justice, dissenting. The injury to be compensable must arise "by accident." It is conceded that the "accident" is not required to be one from the exercise of some external force or outward violence. It is conceded also that the fact that the injured person may have been suffering before the "accident" does not bar compensation, provided the illness or disease may have been precipitated or brought into play by the "accident." But it is the *cause* of the injury which must be accidental. No such *accident* as contemplated by the Georgia statutes is seen from a study of this record. If a person suffering from arteriosclerosis works harder

one day than he does another day at his usual work, and then after such exertion the disease disables him, that mere fact is not enough to show *accident* within the meaning of the statute. Although the majority view is presented in a most able opinion, it seems to me that the provision of the statute that the injury must be one arising *"by accident"* is disregarded, and that under the rulings made the words *"by accident,"* appearing in the statute, are left without meaning or function.