29025. MERRITT *v.* CONTINENTAL CASUALTY INSURANCE COMPANY *et al.*

DECIDED SEPTEMBER 22, 1941.

*R. Beverly Irwin, Young H. Fraser,* for plaintiff.

*T. Elton Drake, Edward B. Lovell, Herman Talmadge,* for defendants.

SUTTON, J. Mrs. Charles C. Merritt filed with the Industrial Board a claim for compensation because of the death of her husband, Charles C. Merritt, as the result of an alleged accident arising out of and in the course of his employment with Atlanta Royal Crown Bottling Company. The single director rendered an award denying compensation. This the full board affirmed, and on appeal the superior court affirmed the award of the full board. The claimant excepted.

The evidence was substantially as follows: The deceased was employed by the Atlanta Royal Crown Bottling Company as a route

superintendent. Among his duties was that of driving its trucks on routes where the drivers were, from special causes, unable to go on the routes from time to time. He also went on trucks on routes where sales were decreasing. On such occasions he either drove the truck himself, as in the first instance, or accompanied the driver with the right, if he chose to do so by reason of his supervisory authority, to drive the truck himself. On May 27th and 28th, 1940, a driver, one Teat, had been off from work on account of illness, and on those days the deceased had driven Teat's truck. On May 29th Teat returned to work, but because he had not fully recovered from his illness the deceased went out on the regular route with him. About 2 o'clock in the afternoon, while the deceased was driving the truck, it slipped off the road into a ditch and bogged down. Teat and a helper got out of the truck and placed rocks and trash under the wheels in order to give the tires more gripping power. Teat then got in the truck and left the deceased and the helper outside and at the rear of the truck. After several unsuccessful efforts to drive the truck out of the ditch Teat finally got it out on firm ground, and continued to drive the truck the rest of the afternoon until completing the trip about 6:30 in the afternoon. Sometime during the afternoon, after the truck had been gotten out of the mud, the deceased complained that he was not feeling well, but attended a sales meeting of the company that night and while there stated that he was not feeling well. When he reached his home that night he went to bed early, and on the following morning ate very little breakfast before going to work. That morning the deceased again accompanied Teat on his route, leaving the company office about 7 o'clock. Teat drove the truck until about 7:30 when the first stop was made. The deceased then drove the truck until about 1 o'clock p. m., and stopped at the place of a customer where he complained to Teat that he had a pain in his chest. He asked Teat to get him some "Tums" and a little later, when he had obtained no relief, asked for a second glass of soda water, and a little later complained that his condition was getting worse. He asked to be taken home, and during the trip complained of severe pain in his chest, and on reaching home had to be assisted into the house. A doctor arrived in a short time, and in a few minutes thereafter Merritt died. The doctor testified, and stated in his death certificate, that Merritt's death was caused by coronary occlusion.

It is contended by the plaintiff in error that the deceased underwent a violent and unusual exertion in driving a heavy truck, weighing 20,000 pounds, along a rough and muddy road, and that it is undisputed that after bringing it to a stop on a paved road he was stricken with an occlusion or bursting of one of the heart arteries or blood vessels and died within thirty minutes thereafter, and that under *Lumbermen's Mutual Casualty Co.* v. *Griggs,* 190 *Ga.* 277 (9 S. E. 2d, 84), the widow was entitled to compensation. While there was testimony that some effort was required to keep the truck on the muddy road, the single director was authorized to find that the deceased did not undergo any unusual strain in operating the truck and had been accustomed to drive it from time to time. The deceased's doctor testified that pushing a truck out of a ditch might be a precipitating cause of coronary occlusion to one in the condition of the deceased, but the evidence wholly failed, as found by the single director, to show that on the afternoon preceding the death of Merritt he took any part whatever in pushing the truck out of the ditch into which it had slipped while he was driving it on a muddy road. There was testimony that he got out of the truck and was at its rear when Teat was trying to drive it out of the ditch, but neither Teat nor his helper nor anyone testified that the deceased did any of the pushing. There was positive and uncontradicted testimony that at no time did he lift or carry any of the cases of drinks which were sold and delivered from the truck. While the father of the deceased testified that at breakfast, on the morning after the afternoon when the truck went into the ditch, the deceased stated to him that he had been "trying to get a truck out of a ditch and pushing on it," such testimony was purely hearsay and without probative value, as the alleged declaration of the deceased was not a part of the res gestæ, but was a mere narrative of something which was represented as having taken place the day before and had become a thing of the past. *W. & A. R. Co.* v. *Beason,* 112 *Ga.* 553, 557 (37 S. E. 863) ; *Bolton* v. *Columbia Casualty Co.,* 34 *Ga. App.* 658 (130 S. E. 535) ; *Hodge* v. *American Mutual Liability Insurance Co.,* 57 *Ga. App.* 403, 404 (195 S. E. 765). The Code, § 114-102, declares: "'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment and shall not include a disease in any form except where it results naturally and unavoidably from.

the accident." Under the evidence as shown by the record the single director was authorized to find that the death of the employee was not shown to have been caused by injury by accident arising out of and in the course of his employment, but was due to a heart disease, or coronary occlusion, with which he was afflicted. *Lumbermen's Mutual Casualty Co.* v. *Griggs,* 190 *Ga.* 277 (9 S. E. 2d, 84), cited and relied on by the plaintiff in error is distinguishable on its facts. There the deceased assisted in unloading about 600 sacks of cement, weighing 94 pounds each, from a railroad car onto trucks. This work required approximately forty minutes, and *immediately* upon completion of the work he became ill and in five or ten minutes suffered a cerebral hemorrhage which resulted in the partial paralysis of his left arm and left leg.

The superior court did not err in affirming the award of the Industrial Board denying compensation to the claimant.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*