S96A1419. CALDWELL v. AARLIN/HOLCOMBE ARMATURE COMPANY et al.
(481 SE2d 196)

Hunstein, Justice.

We granted certiorari in this workers' compensation case to address whether this Court's decision in *Ga. Electric Co. v. Rycroft*, 259 Ga. 155 (378 SE2d 111) (1989), in which we adopted the false representation defense, is inconsistent with the Americans with Disabilities Act, 42 USCA § 12101 et seq. For the reasons set forth below, we decide that the *Rycroft* defense is not inconsistent with the ADA.

In *Rycroft*, supra, this Court adopted the three-factor test set forth in 1B Larson, The Law of Workmen's Compensation, § 47:53 that a false statement in an employment application will bar the employee's recovery of workers' compensation benefits in those situations where (1) the employee knowingly and wilfully made a false representation as to his physical condition; (2) the employer relied upon the false representation and this reliance was a substantial factor in the hiring; and (3) there was a causal connection between the false representation and the injury. *Rycroft*, supra at 158. This Court determined that the adoption of this defense was consistent with Georgia public policy, in that it promotes truthfulness in employment applications and upholds Georgia statutory law voiding contracts procured through fraud. Id. at 159. Further, the Court found the defense to be consistent with the requirements of the Georgia Subsequent Injury Trust Fund, OCGA § 34-9-350 et seq., which allows employers with knowledge of a worker's disability to access the fund, thereby encouraging the employment of disabled persons by protecting employers from excess liability when a worker's injury merges with a preexisting permanent impairment. See *Altermatts Painting v. Subsequent Injury Trust Fund*, 266 Ga. 866 (471 SE2d 877) (1996).

The record in this case reveals that appellant Julius Caldwell injured his back while working for a restaurant in March 1994. Cald-

well received disability and medical benefits for the injury. Caldwell returned to work in April, but he voluntarily quit his job in May and in June applied for a job with Aarlin/Holcombe Armature Company. Caldwell completed an employment application form which contained numerous questions about the applicant's general health, including the question "[h]ave you ever been treated for back problems?" Caldwell answered "no" to this question. Caldwell was hired as a lathe operator and, within two weeks, experienced back pain which he reported to his superior. Maintaining that he had aggravated the condition of his back so that he had again become disabled, Caldwell ceased working in July 1994. In the workers' compensation proceeding Caldwell initiated, the administrative law judge denied Caldwell's motion in limine as to evidence regarding the application form and addressed the merits of the employer's defense under *Rycroft*, supra. The ALJ found that Caldwell knowingly provided false information to the armature company regarding his physical condition in the job application form;[1] that the company relied on the false information and would not have hired Caldwell as a lathe operator had the company known the truth about Caldwell's back injury; and that a causal connection existed between the false representation and the further injury to Caldwell's back. The ALJ thus concluded that under *Rycroft* Caldwell was not entitled to workers' compensation benefits. This ruling was summarily affirmed by the State Board of Workers' Compensation and the superior court; the Court of Appeals denied Caldwell's application for discretionary appeal.

We reject Caldwell's argument that *Rycroft* must be overruled or at least modified because it is inconsistent with the ADA. Initially, we note that the false representation defense adopted in *Rycroft* can be completely consistent with the ADA, in that an employer is not required to utilize any particular type of job application in order to assert the *Rycroft* defense and the ADA does specifically allow covered employers to "make preemployment inquiries into the ability of an applicant to perform job-related functions." 42 USC § 12112 (d) (2) (B). Under that provision an employer is authorized to "describe or demonstrate a particular job function and inquire whether the applicant can perform the function with or without an accommodation." (Footnote omitted.) Ogletree et al., Americans with Disabilities Act:

---

[1] Under the facts in this case, we are not here called upon to determine whether the question asked by the employer was so overly broad that the employee could not be reasonably expected to understand its import or was of such a nature that a reasonable person in the employee's position would not expect or foresee the employer would rely upon the response thereto. See *Lamay v. Roswell Independent School District*, 882 P2d 559 (N.M. App. 1994).

Employee Rights & Employer Obligations, § 5.04[1] [b], p. 5-26. Pre-employment inquiries contained in an employer's application form thus do not automatically violate the ADA and the *Rycroft* defense may arise in instances where a job applicant knowingly and wilfully misrepresents his physical ability in response to a question (properly couched under the ADA) about his ability to perform a described job function.[2] Thus, the basic premise of the false representation defense remains viable in light of the ADA.[3]

Caldwell's argument that Georgia employers must comply with the ADA in order to assert the *Rycroft* defense fails to recognize that the ADA applies only to "covered" employers, i.e., those employers engaged in an industry affecting commerce with 15 or more employees. 42 USC § 12111 (5) (A). The Georgia Workers' Compensation Act applies, with stated exceptions, to employers with three or more employees regularly in service. OCGA § 34-9-2 (a). This Court cannot compel non-covered employers to comply with the ADA pre-offer provisions because such a ruling would conflict with OCGA § 34-6A-3 (a), which provides that nothing in the Georgia Equal Employment for Persons with Disabilities Act shall be construed to prevent an employer from making "any job related inquiry about the existence of the disability of an applicant for employment and about the extent to which that disability has been overcome by treatment, medication, appliances, or other rehabilitation." Compare *Huisenga v. Opus Corp.*, 494 NW2d 469 (Minn. 1992) (employer cannot rely on false representation defense when application asks questions that violate provisions of the Minnesota Human Rights Act, Minn. Stat. § 363.01 et seq., that deem certain pre-offer inquiries about an employee's disabilities to be unfair employment practices).

The prohibition in 42 USC § 12112 (d) (2) (A) of the ADA regarding pre-offer identification of a job applicant's disability by inquiry or examination was designed " 'to assure that misconceptions do not bias the employment selection process.' " Ogletree et al., supra at § 5.04[1] [a], p. 5-25 (citing the U. S. Senate Report on the ADA). We do not condone the use by covered employers of questions in job application forms that violate the provisions of the ADA and thwart its worthwhile goals. However, the ADA provides avenues individuals can pursue when an employer violates the ADA provisions on pre-offer inquiries and examinations. Misrepresenting the truth on an

---

[2] For example, a *Rycroft* defense may arise where a job applicant, who is asked whether he has the physical ability to bend over and lift armatures of a certain weight, responds with a knowing and wilful misrepresentation of his physical ability to perform the described function.

[3] For a discussion of how subsequent injury funds can be coordinated with the ADA, see 2 Larson, The Law of Workmen's Compensation, § 59.33 (g).

improper job application is not one of the avenues provided by the ADA and the ADA does not authorize or countenance the use of knowing and wilful misrepresentations by employees in response to improper questioning by an employer.

Caldwell had a legal remedy available to him for the armature company's improper query on the job application form but he chose not to pursue that remedy. Instead Caldwell chose to misrepresent his physical condition and in reliance thereon, the armature company hired Caldwell as a lathe operator, a position with requirements that imperiled Caldwell's pre-existing injury and caused the subsequent injury that has left Caldwell unable to work. Allowing the armature company to utilize the *Rycroft* defense against Caldwell's claim for benefits does not "reward" it for its improper job application questions, since Caldwell did not have to answer the questions at all and certainly did not have to answer the questions falsely. Rather, disallowing the armature company from utilizing the *Rycroft* defense would be to "reward" Caldwell for his false misrepresentations that led to his unfortunate re-injury.

Where an employer seeks to elicit the truth regarding a job applicant's physical condition in a manner that violates the ADA, the remedy is not for the applicant to misrepresent his or her physical condition to the employer; rather the remedy is recourse to the provisions in the ADA. Where a job application question, however illegally asked, is one upon which a reasonable person in the potential employee's position would expect or foresee that the employer would rely; where the employee knowingly and wilfully provides false information in response to the illegal question; where the employer relies on the misrepresentation as a substantial factor in its decision to hire the employee; and where there is established a causal connection between the false representation and the employee's subsequent work-related injury, we hold that the employer is entitled to assert the false representation defense set forth in *Rycroft*.

Accordingly, under the facts in this case, we affirm the denial of workers' compensation benefits to Caldwell.

*Judgment affirmed. All the Justices concur, except Benham, C. J., who dissents.*

BENHAM, Chief Justice, dissenting.

Finding myself unable to agree with the majority's decision that *Ga. Electric Co. v. Rycroft*, 259 Ga. 155 (387 SE2d 111) (1989), is not inconsistent with the Americans with Disabilities Act, I must respectfully dissent.

The issue before the court is one of first impression, and we granted certiorari to provide guidance in this area to the bench and bar alike. Disagreeing with the majority's approach, I write sepa-

rately to voice a concern that the main opinion creates disharmony and tension between the federal statutory law and this state's case law as to the correct procedure for processing employment applications where a previous ailment or injury might be at issue.

When presented with the issue of whether false statements by a prospective employee concerning the employee's medical condition should bar recovery of workers' compensation benefits, the *Rycroft* court set out a three-part test for making this determination: (1) a knowing misrepresentation by the employee; (2) reliance by the employer on the misrepresentation which was a substantial factor in offering employment; and (3) causal connection between the misrepresentation and the subsequent injury. Id. at 158.

In viewing the standard outlined in *Rycroft*, we must take into consideration several factors. The *Rycroft* decision was rendered by a severely fractured court: the decision to establish the test for barring recovery of workers' compensation was a 4-3 decision with the dissenting Justices not filing a written dissent. This test was established prior to the passage of the Americans with Disabilities Act, and the Supreme Court of Georgia could not have taken into consideration what effect such a statute would have on the *Rycroft* decision. The public policy concerning the treatment of the disabled and injured in the work force is constantly evolving.

In considering the issue presented to this Court, there are three important statutes at the federal and state level that are designed to address the issue of injured employees in the workplace, all of which have humanitarian goals. Georgia's Worker's Compensation statute seeks to alleviate human suffering by providing compensation to those who are injured while engaged in work. *Lumbermen's Mut. Cas. Co. v. Griggs*, 190 Ga. 277 (9 SE2d 84) (1940). Under Georgia law, the Subsequent Injury Trust Fund statute seeks to encourage employment of persons with disabilities without imposing an undue financial hardship on the employer. OCGA § 34-9-350. The Americans with Disabilities Act also seeks to protect the disabled as they seek employment. 42 USC § 12112. Arrayed against these humanitarian statutes at the federal and state levels is the Supreme Court of Georgia's decision in *Rycroft*, which seeks to pursue the public policy goals of truthfulness in employment applications, prevention of fraud, and state statutory harmony. Unfortunately, and for reasons outlined herein, *Rycroft* falls miserably short in the pursuit of these laudable goals.

The Supremacy Clause in Art. VI of the U. S. Constitution requires that, in appropriate circumstances, federal statutes take precedence over state law in the same area. Except for occupational diseases, the Georgia legislature has chosen not to act in the area of false statements made by a prospective employee concerning pre-

existing ailments and injuries. In *Rycroft*, this Court chose to fill that void by interpreting public policy and imposing its three-part test as outlined above to bar recovery of workers' compensation benefits. The decisions of the Supreme Court of Georgia have the force of law, the same as statutory law. Therefore, under the Supremacy Clause, when court decisions are in conflict with federal law in this area they must yield to federal authority. *Silkwood v. Kerr-McGee Corp.*, 464 U. S. 238 (104 SC 615, 78 LE2d 443) (1984).

The Americans with Disabilities Act prohibits employers who meet the threshold requirement with regard to number of employees from making inquiries about disability before the job-offer stage, except as to matters relating to job performance. 42 USC § 12112 (d) (2) (B).[4] Such an approach gives prospective employees an opportunity to be judged on their qualifications and not on their medical histories. The federal statute gives states a wide latitude in providing equal or greater protection than is provided under the federal statute, but it does not allow states to provide lesser protection. *Wood v. County of Alameda*, 875 FSupp. 659 (N.D. Cal. 1995).

We should find instructive the approach taken by our sister state of Alabama. There, certain inquiries regarding medical condition at the preemployment stage are prohibited, but misrepresentation of health or physical condition at the time of hiring acts as a bar to receiving compensation.[5] Such an approach gives a prospective employer an opportunity to make relevant inquiries as to fitness for the job, but it does not give employers carte blanche authority to make improper searching and exhausting inquiries. The Alabama approach, unlike *Rycroft*, encourages honesty by prospective employees because they know they will be judged on their qualifications before the offer of employment is extended, and their medical condition will not come into play until the offer of employment has been extended.

Not only should *Rycroft* yield to the Supremacy Clause, it also must yield to common sense. Application of the *Rycroft* test at the pre-offer stage of employment encourages dishonesty, breeds fraud, and generates disharmony in federal and state law. The decision not only encourages probing and exhausting inquiries as to prior medical

---

[4] "A covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions."

[5] No compensation shall be allowed if, at the time of or during the course of entering into employment or at the time of receiving notice of removal of conditions from a conditional offer of employment, the employee knowingly and falsely misrepresents in writing his or her physical or mental condition and the condition is aggravated or reinjured in an accident arising out of and in the course of his or her employment.
Ala. Code § 25-5-51.

condition, especially at the preemployment level in violation of the Americans with Disabilities Act, it rewards the employer's wrongdoing by allowing it to deny workers' compensation benefits when false statements are made and they meet the *Rycroft* test. Such an approach unnecessarily and impermissibly frustrates and impedes the intent of Congress to provide access to jobs by the disabled, and it vitiates the public policy of encouraging employment of the injured which was expressed in the passage of the statute. This chilling effect on the employment process should not be tolerated.

For these reasons, I would modify the holding in *Rycroft* to permit questions regarding medical conditions only at the job offer level, and would remand the case to the trial court for a determination of this case under the modified *Rycroft* approach.

DECIDED FEBRUARY 17, 1997 —
RECONSIDERATION DENIED MARCH 13, 1997.

*Smith, Wallis & Scott, Christopher B. Scott,* for appellant.
*Drew, Eckl & Farnham, John G. Blackmon, Jr., Marion H. Handley, Moore & Rogers, Robert D. Ingram,* for appellees.